883 So.2d 753 (2004)
Richard HENYARD, Jr., Appellant,
v.
STATE of Florida, Appellee.
Richard Henyard, Jr., Petitioner,
v.
James V. Crosby, Jr., etc., Respondent.
Nos. SC02-1105, SC02-2538.
Supreme Court of Florida.
May 27, 2004.
Rehearing Denied September 22, 2004.
*755 Bill Jennings, Capital Collateral Regional Counsel  Middle Region, Robert T. Strain, Assistant CCRC, and Frank Lester Adams, III, Assistant CCRC, Tampa, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Stephen D. Ake, Assistant Attorney General, Tampa, FL, for Appellee/Respondent.
PER CURIAM.
Richard Henyard, Jr. appeals an order of the circuit court denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), *756 Fla. Const. For the reasons set forth below, we affirm the trial court's denial of Henyard's postconviction motion and deny the petition for writ of habeas corpus.

FACTUAL BACKGROUND
The facts of this case are set out in detail in our previous opinion. See Henyard v. State, 689 So.2d 239 (Fla.1996). Richard Henyard (Henyard), at the age of eighteen, took a gun that belonged to a family friend and decided he was going to steal a car, kill the owner, and put the victim in the trunk so he could go see his father. Henyard convinced a younger, fourteen-year-old friend, Alfonza Smalls, to help him rob someone. On January 30, 1993, Henyard and Smalls waited outside of a Winn-Dixie store in Eustis, Florida. Their victims were Mrs. Dorothy Lewis and her daughters, Jasmine, age three, and Jamilya, age seven, who were shopping at the Winn-Dixie. As the three left the store and returned to their car, Smalls approached Lewis with a gun and ordered her and her daughters in the back of the car. Henyard drove the car out of town.
Henyard stopped the car at a deserted location where the two boys raped Lewis on the trunk of the car while her daughters remained in the back seat. Afterward, Henyard shot Lewis four times, wounding her in the leg, neck, mouth, and the middle of the forehead between her eyes. Henyard and Smalls rolled Lewis's unconscious body off to the side of the road and got back in the car. Jamilya and Jasmine were then driven to a separate location and taken from the car into a grassy area where they were each shot in the head and killed. Lewis survived and was able to make it to a nearby house where the police were called.
At trial, Richard Henyard, Jr. was convicted of three counts of armed kidnapping, one count of sexual battery with the use of a firearm, one count of attempted first-degree murder, one count of robbery with a firearm, and two counts of first-degree murder. After the penalty phase hearing, the jury recommended the death sentence for each of the murder counts by a vote of twelve to zero. The court found four aggravating factors,[1] three statutory mitigating factors,[2] and six nonstatutory mitigating factors.[3] The court found that the mitigating circumstances did not outweigh the aggravating circumstances and sentenced Henyard to death.
This Court rejected all eleven[4] of Henyard's claims on direct appeal and affirmed his conviction and sentence. Henyard *757 then filed the postconviction motion that is the subject of this appeal, wherein he made nine claims.[5] After holding a hearing pursuant to Huff v. State, 622 So.2d 982 (Fla.1993), the trial court conducted an evidentiary hearing on Henyard's ineffective assistance of counsel claim.[6] Both Henyard and the State introduced the testimony of a number of witnesses. Subsequently, the trial court entered an order denying relief. Henyard now appeals, claiming that the trial court erred in denying him relief on his postconviction motion.

ANALYSIS

3.850 APPEAL
Henyard's claims on appeal are rooted in his claim from his postconviction motion that trial counsel was ineffective in investigating and presenting different types of mitigating evidence. On appeal, Henyard divided his claim on ineffective assistance of counsel into six subclaims, alleging that his trial counsel did not adequately investigate or present the following nonstatutory mitigating circumstances: (1) Henyard's *758 lack of stable parental contact and supervision; (2) Henyard suffered physical abuse at the hands of his father's common law wife, Edith Ewing; (3) Henyard's pattern of seeking out younger children as companions due to his lower IQ and "mental" age and to avoid harassment from children his own age; (4) Henyard suffered sexual abuse as a child; (5) Henyard's chronic use of alcohol; (6) Henyard's mental state as characterized by his suicidal feelings. Additionally, Henyard argues that counsel was deficient in preparing one of Henyard's mental health experts for trial. We consider each of Henyard's subclaims in turn.

Investigation and Presentation of Mitigation
In order to prove an ineffective assistance of counsel claim, a defendant must establish two elements:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Wike v. State, 813 So.2d 12, 17 (Fla.2002); Rutherford v. State, 727 So.2d 216, 219-20 (Fla.1998); Rose v. State, 675 So.2d 567, 569 (Fla.1996). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Ineffective assistance of counsel claims present a mixed question of law and fact subject to plenary review based on the Strickland test. See Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999). This requires an independent review of the trial court's legal conclusions, while giving deference to the trial court's factual findings. See id.
Henyard alleges that trial counsel's performance was deficient in investigating potential nonstatutory mitigating circumstances. Under Strickland, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691, 104 S.Ct. 2052. However, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Id. While trial counsel has a duty to investigate, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Id.
Following this standard from Strickland, this Court has held that "[a]n attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence." Rose, 675 So.2d at 571. Moreover, this Court has also recognized that "[t]he failure to investigate and present available mitigating evidence is a relevant concern along with the reasons *759 for not doing so." Id.[7]

Parental Contact and Supervision
First, Henyard argues that trial counsel was ineffective for not presenting four witnesses to show Henyard suffered from a lack of parental contact and supervision. Initially, we would note that this specific claim was not made in Henyard's postconviction motion, and therefore it is procedurally barred. However, even if we were to address the merits, we would conclude that Henyard has not demonstrated a basis for relief. These four witnesses testified at the evidentiary hearing and, in general, their testimony demonstrated that Henyard had a difficult childhood. It was not clear from the evidentiary hearing whether the names of each of these individuals was given to Henyard's defense counsel. Although there was some dispute over trial counsel's attempts to contact one of the witnesses, all four testified that no one from Henyard's defense team had talked to them at the time of Henyard's trial.
Nevertheless, even if we were to assume that Henyard's attorneys performed deficiently by failing to track down these four witnesses and present their testimony at the penalty phase, pursuant to the second prong of the Strickland test, Henyard did not suffer any prejudice because the testimony of the four witnesses was substantially similar to and cumulative with testimony that was actually presented during the penalty phase.[8]See *760 Gudinas v. State, 816 So.2d 1095, 1106 (Fla.2002) (finding that trial counsel was not ineffective for failing to present evidence in mitigation that was cumulative to evidence already presented in mitigation). The various witnesses at both proceedings testified to the fact that Henyard had a difficult childhood, often living in multiple households because his mother was not an adequate caregiver. Thus, even assuming that trial counsel was ineffective in failing to locate the additional witnesses that could have provided additional confirmation to the testimony that was presented at the penalty phase, Henyard has failed to meet the prejudice prong of Strickland, and hence is not entitled to relief on this subclaim. See, e.g., Sweet v. State, 810 So.2d 854, 863-64 (Fla.2002) (noting that the Court did not need to reach the issue of whether trial counsel was deficient in failing to have additional penalty phase witnesses testify, because the testimony of the witnesses at the evidentiary hearing did not establish prejudice where the majority of the testimony was cumulative with other witnesses' trial testimony).

Physical Abuse
Second, Henyard alleges that trial counsel was ineffective for not presenting evidence that Henyard's stepmother, Edith Ewing, physically abused him as a youth. Initially, any evidence of physical abuse presented at the hearing was extremely limited. The allegations of any significant amount of physical abuse came during the testimony of Henyard's "sister," Trena Lenon.[9] All of Lenon's testimony was confined to information that Henyard told her on the phone. She admitted that she was never present for any physical abuse, and that she had no knowledge of whether what Henyard told her was true or not. Other than this, the only other testimony or evidence that might support Henyard's claim was Ewing's own testimony that she spanked Henyard on one or two occasions on the legs with a belt. However, she testified that she did so after Henyard stole a pistol and a VCR.
The trial court rejected Henyard's claim, in part stating that "Ms. Ewing provided a loving and stable home for the defendant, and treated him as one of her own" and that counsel made a strategic decision not to introduce any evidence of the spankings. Notably, the trial court cites Ewing's own testimony from the penalty phase of trial in support of the statement that she provided a loving and stable home. However, there was other testimony from the evidentiary hearing that the relationship between Henyard and Ewing may have been strained.[10]
Nevertheless, even if Henyard's relationship with his stepmother may not have been ideal, his lead counsel, T. Michael *761 Johnson, stated that the defense team did not want to present any evidence that Henyard was abused by Ewing because that would have opened the door to other evidence that Henyard had been involved in various thefts. Moreover, Mark Nacke, another member of Henyard's trial team, specifically testified that the defense looked into Henyard's claims of Ewing's physical abuse and had asked both Henyard's stepmother and his father about these allegations. Nacke said both denied any such abuse and that ultimately the defense team decided not to call Ewing because of evidence that Henyard had stolen money from her.
Therefore, trial counsel made a tactical choice not to discuss the spankings, alleged abuse, or strained relationship with Ewing at the penalty phase in order to prevent evidence of any thefts from being introduced. Henyard's collateral counsel's claim that this evidence should have been introduced despite trial counsel's fears about negative repercussions does not amount to ineffective assistance of counsel in this case, and we find no error in the trial court's rejection of this claim. See Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000) ("Counsel cannot be deemed ineffective merely because current counsel disagrees with trial counsel's strategic decisions.").

Mental Age
Third, Henyard contends that trial counsel was ineffective for failing to call Angellette Wiley to testify at the penalty phase of the trial because she would have given a clear account of incidences where Henyard's behavior proved he preferred to be around younger children. The trial court rejected this claim correctly noting that this evidence was presented to the jury.
Specifically, to the extent any testimony from Angellette Wiley was helpful in showing Henyard's "mental" age, it was cumulative with the statements of her mother, Jacqueline Turner, and her sister, Nyoka Wiley, both of whom testified during the penalty phase of trial.[11] Moreover, the trial testimony of Dr. Jethro Toomer, the psychologist who testified for the defense in the penalty phase, that Henyard was functioning on the level of a thirteen-year-old would have indicated Henyard's mental age to the jury. In fact, the trial court specifically found that Henyard "functions at the emotional level of a thirteen year old and is of low intelligence" as a nonstatutory mitigating factor. See Henyard, 689 So.2d at 244. Because Wiley's evidentiary hearing testimony was cumulative with the arguably more extensive evidence and testimony that trial counsel did present at the penalty phase, we find no error in the trial court's conclusion that Henyard has not satisfied either prong of Strickland.

Alleged Sexual Abuse
Fourth, Henyard claims that trial counsel was ineffective because the defense conducted no investigation and presented no testimony regarding childhood sexual abuse during the penalty phase. Several witnesses at the evidentiary hearing testified that Henyard told them he was molested. However, none of these individuals said they informed defense counsel of Henyard's allegations. Additionally, there is *762 some question about the extent to which Henyard relayed this information to his defense team. J.T. Williams, an investigator for the Public Defender's Office, testified that he asked Henyard in a questionnaire soon after the arrest if he had ever been sexually abused and Henyard wrote that he did not remember ever being sexually abused. According to lead counsel T. Michael Johnson's notes, Henyard also denied ever being sexually abused to a jail psychiatrist. However, although Johnson could not recall what effort he made in investigating the alleged sexual abuse, the notes also indicated that Henyard had told him that he had been fondled by an older man when he was eight or nine, roughly a decade before the murders.
Initially, we would note that the evidence of abuse introduced at the evidentiary hearing came from witnesses who were repeating what Henyard had told them and there was no indication that these witnesses shared this information with Henyard's trial counsel. Moreover, defense counsel was aware of at least two instances where Henyard had specifically said that he was not sexually abused. As noted above, according to Strickland, the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. 466 U.S. at 691, 104 S.Ct. 2052. Strickland further states, "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Id. When determining reasonableness, there is a "heavy measure of deference to counsel's judgments." Id. Although we recognize the difficulty individuals may have in reporting such abuse, in this situation where Henyard had specifically denied on at least two occasions that he had been sexually abused, it is not clear that trial counsel's failure to investigate the conflicting evidence that Henyard may have been molested amounts to ineffective assistance of counsel.
Of course, Henyard was able to introduce evidence that at least one member of his defense team was aware that Henyard claimed he had been abused. Nevertheless, even if we were to determine that trial counsel should have conducted further investigations into the allegations of molestation, the evidence that Henyard introduced at the evidentiary hearing does not demonstrate that he was prejudiced in this case. The only information introduced at the hearing consisted of brief, second-hand accounts by witnesses of what Henyard had told them. There was no additional evidence that the alleged molestation had in fact occurred. Likewise, there was no testimony from mental health experts as to how the alleged molestation, which occurred a decade before the crime, had affected Henyard. Therefore, the trial court did not err in finding that Henyard has not demonstrated prejudice on this claim.

Use of Alcohol and Drugs
Fifth, Henyard alleges that trial counsel was ineffective for failing to investigate or present evidence to the jury regarding his "chronic use of alcohol." The trial court in its order noted that the only germane evidence at the evidentiary hearing came from the testimony of Henyard's expert witness, Dr. Bauers. Moreover, the trial court concluded that the first prong of Strickland had not been met because Henyard had not shown that the failure to present the alleged evidence of his history of chronic alcohol and marijuana use was based on trial counsel's deficient performance.
*763 We agree with the trial court's assessment of this claim. During the evidentiary hearing, Dr. Bauers testified that Henyard told him he started drinking beer and smoking marijuana between the ages of eight and ten, but he denied ever being seriously intoxicated or using hard drugs. He also told Dr. Bauers that his use of alcohol and marijuana decreased when he went to live with his father at the age of eleven. There was no other evidence presented during the evidentiary hearing regarding Henyard's chronic use of alcohol. Therefore, based on the fact that this issue was not addressed in any detail at the evidentiary hearing, Henyard has not demonstrated error in the trial court's conclusion that he has not shown his counsel's performance was deficient.

Suicide Attempt
Sixth, Henyard contends that trial counsel was ineffective for not presenting evidence to the jury during the penalty phase of the trial of his mental state as characterized by his suicidal ideations. Although Jacqueline Turner, Henyard's godmother, testified that Henyard told her he did not want to live after he had been arrested, the primary evidence related to suicidal tendencies that came out at the evidentiary hearing centered on an alleged suicide attempt in the Lake County Jail after Henyard had been arrested for the murders. Trial counsel was made aware of Henyard's suicide attempt by the medical department supervisor from the Lake County Jail, Dan Pincus. Pincus also advised trial counsel that Henyard was placed on suicide watch because it was possible that Henyard would try to commit suicide again. However, Pincus also informed Henyard's trial counsel that he did not believe the suicide attempt to be legitimate because Henyard was purposely keeping his eyes shut as Pincus was trying to examine him.[12] Additionally, although Henyard was placed on suicide watch, the standard procedure when there was any threat of suicide, whether legitimate or not, was to place the prisoner on suicide watch. When trial counsel, T. Michael Johnson, asked Henyard about the suicide attempt, Henyard indicated that he wanted to go back in the medical wing of the jail.
The circuit court found that Henyard's suicide attempt could have potentially been viewed as manipulative. We agree with the trial court's finding that trial counsel was not deficient in not introducing this evidence. Rather, the decision not to present evidence of this suicide attempt to the jury was a reasonable strategic decision by Henyard's counsel given what counsel knew about the attempt, and therefore Henyard's claim does not satisfy the first prong of Strickland.

Preparation of Mental Health Expert
Finally, Henyard claims trial counsel was ineffective for failing to adequately prepare one of his mental health experts, Dr. Jethro Toomer, for his testimony at the penalty phase.[13] Henyard attempted to prove Dr. Toomer was not adequately prepared by comparing Dr. Toomer's results with the evidentiary hearing testimony of Dr. Bauers' results.
We find Henyard's claim to be without merit. The trial court found nothing in Dr. Bauers' testimony that was any more favorable to Henyard than the testimony *764 Dr. Toomer provided at trial and also rejected this claim as legally insufficient because Henyard did not specify the mitigation that trial counsel failed to call to Dr. Toomer's attention. Moreover, the trial court noted that the defense team consulted two mental health experts and that there was no evidence presented at the evidentiary hearing that Dr. Toomer was inadequately prepared.
We agree with the trial court's decision on this claim. At the evidentiary hearing, Dr. Bauers testified that he did not believe that Dr. Toomer did anything improper or that he in any way mishandled his examination or testimony. In fact, Dr. Bauers characterized Henyard's neuropsychological abilities as exhibiting some strengths and some weaknesses, but indicated that the weaknesses were relatively mild and that they were consistent with what Dr. Bauers knew about Henyard's educational, occupational, and sociocultural background. Therefore, we conclude the trial court did not err in finding that Henyard was not entitled to relief on this issue.

HABEAS PETITION
Henyard's petition for writ of habeas corpus raises three claims: (1) appellate counsel rendered ineffective assistance for not raising on direct appeal the improper ruling on trial counsel's motion to withdraw; (2) under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), Florida's capital sentencing statute violates the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and the corresponding provisions of the Florida Constitution; and (3) Henyard's right preventing cruel and unusual punishment will be violated as he may be incompetent at the time of his execution.

Ineffective Assistance of Appellate Counsel
Henyard argues that appellate counsel was ineffective for failing to raise the trial court's denial of his public defender's motion to withdraw. Claims of ineffective assistance of appellate counsel are appropriately raised in a petition for writ of habeas corpus. See Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). Consistent with the Strickland standard, in order to grant habeas relief based on ineffectiveness of counsel, this Court must determine:
[W]hether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); see also Freeman, 761 So.2d at 1069; Thompson v. State, 759 So.2d 650, 660 (Fla.2000). "The defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069. Moreover, appellate counsel cannot be deemed ineffective for failing to pursue a meritless claim. See Johnson v. Singletary, 695 So.2d 263, 266-67 (Fla.1996).
The facts underlying this claim are as follows. Before trial, Henyard's public defender filed a motion to withdraw on the grounds that the State had listed a former client as a witness in the case. The motion stated that the public defender's office had represented the witness a number of times in the past and if Henyard was represented by the office of the public defender it would put the public defender's office in *765 the "untenable position of having to cross-examine a former client." Subsequently, the public defender filed an addendum to the motion to withdraw. No additional argument was offered, but the addendum listed nine additional witnesses that had previously been represented. Of these nine individuals, only one ultimately testified at trial.
At the hearing on the motion to withdraw, the State argued that the witness listed on the original motion to withdraw had not been represented recently because all of her cases had been closed. The State had not checked each of the witnesses on the addendum, but opined that based on the case numbers other witnesses' cases were also closed. After defense counsel volunteered that none of the witnesses were being represented the trial court denied the motion.
In his reply brief, Henyard argues that the governing law at the time of trial, notably section 27.53(3), Florida Statutes (1993), as interpreted by Guzman v. State, 644 So.2d 996 (Fla.1994), presumed that a conflict existed upon the filing of the motion to withdraw and that the trial court judge had no discretion other than to grant the motion. In other words, Henyard is arguing that the trial court's questioning surrounding the motion was inappropriate. In relevant part, section 27.53(3) stated:
If at any time during the representation of two or more indigents the public defender shall determine that the interests of those accused are so adverse or hostile that they cannot all be counseled by the public defender or his staff without conflict of interest, or that none can be counseled by the public defender or his staff because of conflict of interest, it shall be his duty to move the court to appoint other counsel.
§ 27.53(3), Fla. Stat. (1993). Notably, trial counsel's motion to withdraw made no reference to section 27.53(3). Moreover, the motion did not allege that the public defender had determined that Henyard and the potential witnesses had interests that were so adverse or hostile that they could not be counseled by the public defender's office, as required by Guzman. See 644 So.2d at 999. Rather, the motion stated, as to potential witness Neal, that the public defender's office would be placed "in the untenable position of having to cross-examine a former client." The addendum in which the only witness that actually testified at trial was listed contained no reference to section 27.53(3) or additional legal argument either. Under these specific circumstances, we conclude that the motion did not satisfy the requirements of section 27.53(3), and therefore appellate counsel cannot be deemed ineffective for failing to raise this issue on appeal. See Johnson v. Singletary, 695 So.2d 263, 266-67 (Fla.1996).

Ring Claim
Next, Henyard asserts that Florida's capital sentencing scheme violates the United States and Florida Constitutions. This Court addressed similar contentions in Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002), and, while there was no single majority view expressed, we denied relief. We have since rejected similar claims on other occasions and find that Henyard is likewise not entitled to relief on this claim. See, e.g., Rivera v. State, 859 So.2d 495 (Fla.2003); Jones v. State, 855 So.2d 611, 619 (Fla.2003); Chandler v. State, 848 So.2d 1031, 1034 n. 4 (Fla.2003).
*766 Moreover, we note that the jury unanimously recommended the death penalty in this case, and respective to each murder the trial court found the aggravating circumstances of previous conviction of seven prior violent felonies, six of which included the contemporaneous convictions for crimes against the victims in this case, and that the commission of the murders was in the course of an enumerated felony (kidnapping). These two aggravating circumstances were charged in the indictment and found by the jury, and therefore Henyard is not entitled to relief on this claim. See Banks v. State, 842 So.2d 788, 793 (Fla.2003).

Incompetence to be Executed
Finally, Henyard argues that it would violate the Eighth Amendment's prohibition against cruel and unusual punishment to execute him since he may be incompetent at the time of execution. Because this issue is being raised to preserve federal claims, Henyard concedes that it is premature and that he cannot legally raise the issue of his competency to be executed until after a death warrant is issued. See Hall v. Moore, 792 So.2d 447, 450 (Fla. 2001); Fla. R.Crim. P. 3.811(c). As no death warrant for Henyard has been signed, Henyard's claim is not yet ripe for review by this Court.

CONCLUSION
For the reasons discussed above, we affirm the lower court's denial of Henyard's motion for postconviction relief and we also deny his petition for writ of habeas corpus.
It is so ordered.
WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, C.J., concurs specially with an opinion.
CANTERO, J., concurs with an opinion, in which BELL, J., concurs.
ANSTEAD, C.J., specially concurring.
I concur in the majority opinion in all respects except for its discussion of the decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
CANTERO, J., concurring.
I concur in the majority opinion. Moreover, regarding Henyard's claim that Florida's capital sentencing scheme violates Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), I also would hold, for the reasons stated in my specially concurring opinion in Windom v. State, 29 Fla. L. Weekly S191, S197-203 (Fla. May 6, 2004), that Ring does not apply retroactively.
BELL, J., concurs.
NOTES
[1] The trial court found the following aggravating factors: (1) the defendant had been convicted of a prior violent felony; (2) the murder was committed in the course of a felony; (3) the murder was committed for pecuniary gain; and (4) the murder was especially heinous, atrocious or cruel.
[2] The trial court found the following statutory mitigating factors: (1) Henyard's age of eighteen at the time of the crime; (2) evidence that Henyard was acting under an extreme emotional disturbance; and (3) Henyard's capacity to conform his conduct to the requirements of law was impaired.
[3] The trial court found the following nonstatutory mitigating circumstances: (1) the defendant functions at the emotional level of a thirteen-year-old and is of low intelligence; (2) the defendant had an impoverished upbringing; (3) the defendant was born into a dysfunctional family; (4) the defendant can adjust to prison life; (5) the defendant could have received eight consecutive life sentences with a minimum mandatory of fifty years; and (6) Henyard's codefendant, Smalls, could not receive the death penalty as a matter of law.
[4] The eleven claims were: (1) the trial court abused its discretion in failing to grant Henyard's motions for a change of venue; (2) the trial court erred when it (a) granted the State's challenge for cause of one prospective juror (who stated he could not, under any circumstances, recommend a death sentence for Henyard because of his youth), and (b) refused to excuse three prospective jurors Henyard challenged for cause; (3) the trial court erred in denying Henyard's motions to suppress his statement to the police because the interrogating officers failed to honor Henyard's request to cease questioning in violation of his right to remain silent under article I, section 9 of the Florida Constitution; (4) the trial court abused its discretion in admitting DNA evidence which was not supported by a proper predicate of reliability; (5) the trial court erred by (a) allowing the State, during voir dire, to tell prospective jurors that if the evidence of aggravators outweighed the evidence of mitigators then the jury's sentence recommendation must be for death as a matter of law, and (b) suggesting during closing argument that Henyard never admitted to raping Lewis when, in fact, he did confess to raping her in his third confession to police on the day after the murders; (6) the trial court erred in allowing a police officer to testify as to hearsay statements Lewis made to him when he came to her aid after the offense; (7) the trial court erred by giving the standard jury instructions on premeditated murder and reasonable doubt, and by failing to give the jury a special verdict form on the theory of guilt; (8) the trial court erred during the penalty phase by (a) instructing the jury on the avoid arrest aggravator, (b) expressly considering as an aggravator, and allowing the jury to hear, evidence of Henyard's prior juvenile adjudication for robbery with a weapon, and (c) allowing Lewis and Leroy Parker to testify at the penalty phase because their testimony did not tend to prove any statutory aggravating circumstance; (9) the trial court abused its discretion in denying Henyard's specially requested penalty-phase jury instruction on the heinous, atrocious or cruel aggravating circumstance, which instructed on "tortuous [sic] intent," and further erred by giving the standard heinous, atrocious or cruel instruction, which is unconstitutionally vague and overbroad; (10) the trial court erred by relying upon two aggravating circumstances  pecuniary gain and heinous, atrocious or cruel  as support for Henyard's death sentences because they were not proven beyond a reasonable doubt; and (11) the death penalty is not proportionally warranted in this case.
[5] The nine claims raised in Henyard's motion were: (1) ineffective assistance of counsel during penalty phase because trial counsel failed to adequately investigate and prepare mitigating evidence and to adequately challenge the State's case; (2) trial counsel was ineffective for failing to interview the jurors about any changes in their penalty phase voting; (3) trial counsel was ineffective for failing to ask jurors various questions; (4) the jury instructions violated Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); (5) the Florida death penalty statute is unconstitutional on its face and as applied; (6) electrocution is unconstitutional; (7) entitlement to relief because of "cumulative error;" (8) the death sentence rests on an unconstitutionally automatic aggravating circumstance; (9) the death sentence is unconstitutional because Henyard has the intellectual capacity of a thirteen-year-old child.
[6] The evidentiary hearing was held only as to portions of Henyard's first claim regarding ineffective assistance of counsel.
[7] Recently, the United States Supreme Court in Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), applied the Strickland standard with regard to the adequacy of counsel's investigation into mitigating evidence. The Court reiterated:

[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
Wiggins, 123 S.Ct. at 2535 (quoting Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052). The Court determined that the principal concern about whether the attorneys in the case exercised reasonable professional judgment hinged on whether the investigation supporting counsel's decision not to introduce mitigating evidence was itself reasonable. Id. at 2536. The Court concluded that the attorneys' investigation, which was limited to obtaining two documents that indicated that the defendant had a troubled social and family history, fell short of the prevailing standards in place at the time of the trial. Id. at 2536.
[8] At the evidentiary hearing, the four witnesses testified that Henyard had to live with people in the neighborhood because his mother did not take good care of him. They also testified that Henyard's mother was promiscuous and was addicted to drugs and alcohol. Although these witnesses may have provided some evidence as to Henyard's difficult childhood, this evidence would have been cumulative with the evidence that was presented during the penalty phase. At the penalty phase of the trial, Jacqueline Turner, Henyard's godmother, who also testified at the evidentiary hearing, testified in some detail about Henyard's upbringing and childhood. She testified that Henyard's mother had a chronic problem with alcohol and drug abuse during Henyard's entire life. Henyard's mother also testified that she constantly drank heavily and did other drugs while Henyard was young. She also testified that Henyard lived with his godmother and his father most of the time while he was young and she rarely stayed in contact with him when he was not staying with her. Henyard's father also testified that he had to take custody of Henyard because Henyard's mother was not taking care of him. Henyard's father testified that he could not spend much time with his son either because of his work schedule. During the penalty phase of the trial, Henyard's godsister also testified that Henyard had to stay with her mother because his mother was not taking care of him. This testimony was stressed in some detail in the defense's closing argument.
[9] Although they were not biologically related, Lenon testified that she and Henyard were raised in the same household for a time and she referred to him as a brother.
[10] For example, T. Michael Johnson, Henyard's lead trial counsel, in explaining that there were strategic decisions not to have certain witnesses testify stated, "His stepmother and he did not get along. And she was of the opinion that she had been a great stepmom and he was a little thief when he came down there so we did not want that to come in." Dr. Russell Bauers, an expert witness in the field of neuropsychology and clinical psychology, testified that Henyard felt his stepmother treated her own son preferentially and would get things for her son that would be denied to Henyard. Henyard told Dr. Bauers that he decided that if he really wanted something he would have to go out and get in on his own by stealing it.
[11] For example, at trial, Nyoka specifically testified that most of Henyard's friends were younger than he was and she recounted an incident where Henyard did not want to go to the ninth grade because he wanted to return to middle school to be with younger people. At the evidentiary hearing, Angellette Wiley and Jacqueline Turner testified regarding the same incident, and this was the only indication that Henyard preferred the company of younger children.
[12] Pincus also did not believe Henyard's suicide attempt was legitimate because the method Henyard used was a difficult and rare way to attempt suicide.
[13] Henyard argues that Dr. Toomer was not prepared because he did not speak with Richard Henyard, Sr., Edith Ewing, or Jacqueline Turner's husband or review any of Henyard's hospital records.