975 So.2d 405 (2007)
Jason Demetrius STEPHENS, Appellant,
v.
STATE of Florida, Appellee.
Jason Demetrius Stephens, Petitioner,
v.
James R. McDonough, etc., Respondent.
Nos. SC05-1301, SC06-1729.
Supreme Court of Florida.
November 15, 2007.
Rehearing Denied February 6, 2008.
*409 D. Todd Doss, Lake City, FL, for Appellant/Petitioner.
Bill McCollum, Attorney General, and Meredith Charbula, Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Jason Demetrius Stephens appeals an order of the circuit court denying his motion to vacate his sentence of death filed under Florida Rule of Criminal Procedure 3.851, and he petitions this Court for a writ of habeas corpus. We have jurisdiction. *410 See art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the denial of postconviction relief and deny the petition for writ of habeas corpus.
FACTS AND PROCEDURAL HISTORY
Jason Demetrius Stephens was charged with one count of first-degree murder, one count of armed kidnapping, six counts of armed robbery, two counts of attempted armed robbery, one count of burglary, and one count of aggravated battery. He pled guilty to the armed kidnapping of Robert Sparrow III (Little Rob), armed robbery of Robert Sparrow Jr., armed robbery of Derrick Dixon, armed robbery of Roderic Gardner, attempted robbery of Tammy Cobb, attempted robbery of David Cobb, armed burglary and aggravated battery. The jury found Stephens guilty of first-degree murder of Little Rob and armed robbery of Kahari Graham.
There were eight eyewitnesses at the scene of the crime who testified at trial.[1] While some of the details of the eyewitnesses' accounts varied, they all substantially agreed with the following summary of events. On June 2, 1997, at approximately 2 p.m., Stephens entered the house, carrying a nine-millimeter automatic gun. He was standing next to Little Rob, who was three years and four months old. Upon seeing the gun, Consuelo Brown physically confronted Stephens. Stephens hit her with the gun on the bridge of her nose. Ms. Brown fell to the ground and her nose began to bleed. Stephens ejected a bullet onto the floor and informed the occupants that the gun was loaded. He told them that he wanted money and marijuana. He demanded from Robert Sparrow, Jr. the keys to a blue car located outside the house. Sparrow Jr. told Stephens the keys were with someone who was not present at the house. Thereafter, two other individuals entered the house. One of the individuals was Horace Cummings, but the other individual was never identified.[2] Stephens made all the occupants lie down on the floor as he searched their pockets for valuables. The unidentified individual, referred to as Plats or Dreds because of the way he wore his hair, held the occupants of the house on the floor at gunpoint while Stephens located a secure room where he could put them. There was some testimony that Little Rob said he was being choked, but it was unclear from the record who was choking him. After inspecting the house, Stephens determined the bathroom was the most secure location to put his hostages, and he ordered six of them to crawl to the bathroom. Little Rob was kept separate from the others.[3]
*411 After the occupants had been secured in the bathroom, David Cobb and Roderic Gardner arrived at the house. Upon entry, they too were robbed and forced to crawl to the bathroom. One of the items Stephens took from Gardner was his car keys. Gardner was driving his mother's dark green Kia, which had roll-down windows and pull-up locks. There was testimony that Little Rob had ridden in the Kia the day before he was killed. On that day, he had been scolded for rolling down the windows and trying to open the car door while it was moving. The record did not reflect that Stephens had any way of knowing whether the child was capable of rolling down the windows or opening the car door.
When Stephens exited the house with the child, the other individuals, who Stephens testified had only gone to the house to buy drugs, were seated in the black car they had driven to the scene. Stephens testified that the other individuals waved him away from the black car because he had the child. Stephens then ordered the boy to get into the Kia. Both cars pulled away from the house, with the Kia following the black car. After driving eight tenths of a mile, both cars pulled over in a residential neighborhood. The Kia was parked on the side of the street without the benefit of any shade. It was approximately 2:30 p.m., the weather was sunny, and the outside temperature was approximately 82 degrees. The windows in the car were rolled up and all of the doors were closed. At 9:25 p.m., the Kia was found and Little Rob was dead, his body lying face down in the passenger's seat with his feet angled toward the steering wheel. The State argued Stephens suffocated Little Rob before leaving the car. Stephens testified the boy was alive when he left him in the car.
The medical examiner, Bonifacio Floro, M.D., testified that in his expert medical opinion, Little Rob had probably died of asphyxiation.[4] However, he could not conclusively rule out hyperthermia as the cause of death. He primarily relied upon multiple petechiae in the face and eye lining as an indication of asphyxiation. He also noted there was a small four-millimeter scratch on the back of the child's neck. Dr. Floro concluded the scratch was probably caused by a fingernail. Dr. Floro testified the child's lower lip was bruised, indicating he had been suffocated. Dr. Floro also relied upon the lack of fingerprints or other evidence showing the child tried to roll down the window or open the door in concluding it was more likely that Little Rob died from asphyxiation than hyperthermia. Steven Frank Dunton, M.D., testified on the defendant's behalf. After reviewing Dr. Floro's report, he concluded Little Rob died from hyperthermia. Dr. Dunton relied upon the fact that there were very few signs of asphyxiation. However, he did admit asphyxiation can never be conclusively ruled out because it can leave no signs at autopsy. Dr. Dunton admitted hyperthermia by itself should not cause petechiae, whereas asphyxiation could. However, he went on to explain that gravity will pull the blood down to the lowest point of the body when the heart stops pumping, causing the blood to pool to such a degree that venules rupture resulting in petechiae. He attributed the discoloration of the child's lips to the tissues drying out after death. Therefore, he concluded Dr. Floro erred in relying on *412 the petechiae to diagnose the child's death as being caused by asphyxiation.
Based upon these facts the jury concluded Stephens was guilty of first-degree murder. The verdict form did not delineate between first-degree premeditated murder and first-degree felony murder. During the penalty phase, the State offered victim impact testimony and evidence of a prior violent felony against a sixteen-year old girl. Stephens offered mitigating testimony that he was good with children, had been raised in a good Catholic family, had an ability to work with his hands to build things, had been deeply affected by his father's death, was remorseful for Little Rob's death, and was religious. The jury recommended death by a nine-to-three vote. The trial court found three aggravating circumstances: (1) prior violent felony; (2) murder during the commission of a felony; and (3) the age of the victim, all of which were given great weight. The trial court discussed and gave some weight to a number of nonstatutory mitigating factors, including: volunteer church work; the defendant's fondness for children; employment; Stephens' religious and supportive family; Stephens' educational background; adjustment to incarceration; lack of intent to kill; a codefendant's life sentence; and Stephens' pleas of guilty to other offenses.
The trial court followed the jury's recommendation and sentenced Stephens to death for the first-degree murder charge. Stephens was also sentenced to life imprisonment for armed kidnapping with the sentence to run consecutive to the murder sentence. He was sentenced to concurrent life terms for the six armed robberies with these sentences to run consecutive to the murder and armed kidnapping sentences.
On direct appeal, Stephens raised eleven issues.[5] This Court rejected Stephens' arguments and affirmed his convictions and sentence of death. Stephens v. State, 787 So.2d 747 (Fla.2001).
In October 2002, Stephens filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.851, raising eighteen claims. After a Huff[6] hearing, the court granted Stephens an evidentiary hearing on seven claims. On August 4, 2004, Stephens filed an amended and supplemented motion to vacate judgment of conviction and sentence with special request for leave to amend. Stephens repled the claims presented in his initial motion for postconviction relief and raised a nineteenth claim alleging error under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). After an evidentiary hearing on the seven claims, on April 29, 2005, the circuit court issued an order denying all of Stephens' *413 claims. Stephens has appealed the denial of his postconviction motion to this Court. He has also filed a petition for a writ of habeas corpus.

RULE 3.851 APPEAL
Stephens has appealed the denial of postconviction relief to this Court, raising five issues. He contends that (1) trial counsel rendered ineffective assistance during the penalty phase of trial; (2) trial counsel rendered ineffective assistance during the guilt phase of trial; (3) trial counsel was operating under a conflict of interest; (4) trial counsel rendered ineffective assistance by failing to pursue a motion requesting a jury interview; and (5) the trial court erred by instructing the jury regarding aggravating factors that did not apply. We deny relief on all of the claims.
Stephens argues that trial counsel rendered ineffective assistance during the guilt phase and penalty phase of his trial. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient and that the deficient performance prejudiced the defendant so as to deprive the defendant of a fair trial. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (affirming the Strickland two-prong analysis for claims of ineffective assistance of counsel). As to the first prong, the defendant must establish that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. 2052; see also Cherry v. State, 659 So.2d 1069, 1072 (Fla.1995). For the second prong, the reviewing court must determine whether there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687, 104 S.Ct. 2052.
Generally, this Court's standard of review following a denial of a postconviction claim where the trial court has conducted an evidentiary hearing accords deference to the trial court's factual findings. McLin v. State, 827 So.2d 948, 954 n. 4 (Fla.2002). "As long as the trial court's findings are supported by competent substantial evidence, `this Court will not substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court.'" Blanco v. State, 702 So.2d 1250, 1252 (Fla.1997) (quoting Demps v. State, 462 So.2d 1074, 1075 (Fla. 1984)). However, the circuit court's legal conclusions are reviewed de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).

Ineffective Assistance of Counsel During Penalty Phase

Failure to Present Mitigation
Stephens alleges that his penalty phase counsel provided ineffective assistance by failing to discover and present a wealth of mitigation available due to inadequate investigation. With respect to the investigation and presentation of mitigation evidence, the United States Supreme Court observed in Wiggins that "Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort *414 would be to assist the defendant at sentencing. Nor does Strickland require defense counsel to present mitigating evidence at sentencing in every case." Wiggins v. Smith, 539 U.S. 510, 533, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Rather, in deciding whether trial counsel exercised reasonable professional judgment with regard to the investigation and presentation of mitigation evidence, a reviewing court must focus on whether the investigation resulting in counsel's decision not to introduce certain mitigation evidence was itself reasonable. Id. at 523, 123 S.Ct. 2527; Strickland, 466 U.S. at 690-691, 104 S.Ct. 2052. When making this assessment, "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." Wiggins, 539 U.S. at 527, 123 S.Ct. 2527.
Counsel testified at the evidentiary hearing that his strategy was to humanize Stephens by calling family and friends to testify that Stephens was a loving person, that he had good relations with children, and that he took care of different children. This strategy was especially important because the case involved the death of a child. Counsel further testified that he was trying to get the jury to hear good things about Stephens in an attempt to get a life sentence. The record demonstrates that counsel did in fact call ten lay witnesses during the penalty phase. All ten witnesses testified that Stephens was a loving, cheerful, and bright person who came from a loving family and who was good with children.
Stephens contends that counsel failed to discover many of the details that established compelling mitigation, such as his drug use, an incident where Stephens started a fire at a neighbor's house, and the accidental shooting of Stephens' brother. However, counsel testified that he did not consider these incidents as mitigation and that such information went against his strategy to portray Stephens as a "good guy."
In denying Stephens' claim of ineffective assistance of counsel, the trial court applied the Strickland standard and concluded that Stephens did not satisfy either prong of Strickland. We agree with the trial court's assessment that counsel's investigation and preparation of mitigating evidence was not deficient. The trial court found that counsel was attempting to paint a "good guy" image of Stephens to the jury to show that Stephens should receive a life sentence, not a death sentence. Counsel made a strategic decision to focus on the humanization of Stephens through lay testimony, and cannot be deemed ineffective for such action. See Occhicone v. State, 768 So.2d 1037 (Fla.2000).
With regard to mental health testimony, Stephens contends that counsel failed to request the assistance of experts to evaluate Stephens for mitigation. Stephens' claim is not supported by the record. Counsel testified at the evidentiary hearing that he consulted two experts, Dr. Ernest Miller and Dr. Peter Knox. He further testified that he did not consult both experts just to know if Stephens was competent to stand trial or if Stephens was insane at the time of the crime, but also to see if they could help determine if there was any mental health mitigation. Counsel testified that after reviewing the reports of both experts, he believed the experts' conclusions were detrimental to Stephens and that it would not be in Stephens' best interest to present the findings.
Stephens presented the testimony of Dr. Jethrow Toomer at the evidentiary hearing to demonstrate that if counsel had received appropriate assistance from a mental health expert, the expert would have been *415 able to educate the jury as to why Stephens acted as he did. The trial court found that being able to secure an expert witness to provide an opinion as to mental health mitigation during postconviction proceedings, which arguably could have been helpful to Stephens, does not, in and of itself, render trial counsel's performance ineffective. See Fennie v. State, 855 So.2d 597 (Fla.2003) (citing Provenzano v. Dugger, 561 So.2d 541 (Fla.1990)). The trial court also found that Dr. Toomer's findings could have been harmful because those findings seemed to suggest that the description of Stephens' childhood portrayed through the testimony of witnesses at the penalty phase was false. As a result, Dr. Toomer's testimony would have contradicted and undermined the "good guy" defense. We agree with the trial court's assessment that Dr. Toomer's findings would have been damaging to the "good guy" image that counsel was attempting to portray. Counsel cannot be deemed ineffective when he made a strategic decision to focus on the positive aspects of Stephens' life instead of seeking a third opinion. Dufour v. State, 905 So.2d 42, 56 (Fla.2005) (finding trial counsel was not ineffective in not seeking a second opinion where the "record clearly reflect[ed] that counsel attempted to secure a mental health expert, had no reason to doubt that expert's negative conclusions, and made an informed decision not to present a mental health expert").
Because focusing on a "good guy" image of Stephens through lay witnesses was a reasonable strategic decision by counsel, his performance was not deficient. We affirm the trial court's denial of relief on this claim.

Failure to Challenge or Neutralize Prior Violent Felony Conviction
Stephens contends that counsel was ineffective for failing to challenge or neutralize the 1992 burglary conviction that the State introduced as a prior violent felony aggravator. With regard to the failure to challenge, we agree with the trial court's finding that Stephens' contention is mistaken. When the State offered the burglary conviction in aggravation, counsel immediately objected on the record. Accordingly, counsel cannot be deemed ineffective for failing to object when, in fact, he did object.
With regard to the failure to neutralize the burglary conviction as an aggravator, counsel testified at the evidentiary hearing that he deposed Latonya Jackson, the victim of the burglary, and looked at the police reports of the burglary conviction and understood that there was damaging information about it. Counsel testified that he knew that even if he objected to the introduction of the aggravator, the burglary conviction was nonetheless going to come in. As a result, counsel made a strategic decision not to focus on introducing evidence to possibly lessen the weight of the aggravator because he believed it could backfire. Counsel cannot be deemed ineffective for making a strategic decision "if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." Brown v. State, 894 So.2d 137, 147 (Fla.2004). We affirm the trial court's denial of relief on this claim.

Failure to Object
Stephens contends that counsel was ineffective for failing to object to some of the prosecutor's comments and photographs displayed during the State's closing argument. Stephens first points to two specific comments that were allegedly improper. These comments focused on the uniqueness of the victim of the murder, *416 Little Rob, and how his death was a loss to his friends, family, and the community. Counsel testified at the evidentiary hearing that he did not object to such comments because he did not find anything objectionable or improper about these comments. We agree that the prosecutor's comments on victim impact were permissible under section 921.141(7), Florida Statutes (2006).[7] In Bonifay v. State, 680 So.2d 413, 419-20 (Fla.1996), we held that victim impact comments were proper because
the boundaries of relevance under [section 921.141(7)] include evidence concerning the impact to family members. Family members are unique to each other by reason of the relationship and the role each has in the family. A loss to the family is a loss to both the community of the family and to the larger community outside the family.
In this case, the prosecutor permissibly commented on the impact Little Rob's death had on his friends and family. Even after making these comments, the prosecutor stated that sympathy for either Stephens' family or Little Rob's family should not be the basis for the jury's verdict. Further, the prosecutor emphasized that the victim impact evidence was not introduced to gain sympathy and that such evidence could not be used either to establish an aggravating circumstance or to make the weight of the aggravating circumstance greater than it was.
Stephens also alleges that certain photographs displayed by the prosecutor were improper and objectionable. These photographs included one that displayed what happened to Little Rob's mother during the crime, another that displayed a picture of Little Rob before the day of the murder, and another that showed Little Rob after his death.
With regard to the photograph of Little Rob before he died, we have held before that the introduction of a photograph of a victim before the victim was murdered is not improper because such evidence can "demonstrate the victim's uniqueness as an individual. . . . While such evidence can have an emotional impact on jurors, the effect is minimized where the photo is a basic portrayal of the victim, presented to the jury in a routine manner." Branch v. State, 685 So.2d 1250, 1253 (Fla.1996). The other two photographs were relevant to the facts and issues of the case and, as a result, were not improper. During the commission of the crime, Stephens hit Little Rob's mother with the gun on the bridge of her nose and, as a result, she fell to the ground and her nose began to bleed. The photograph showing Little Rob after he died is also relevant because the manner of death was hotly disputed. Furthermore, as we stated in Henderson v. State, 463 So.2d 196, 200 (Fla.1985), "[t]hose whose work products are murdered human beings should expect to be confronted by photographs of their accomplishments."
Counsel is not ineffective for making a tactical decision not to object to statements and photographs introduced during the State's closing arguments when those *417 statements and photographs were not improper. See Mungin v. State, 932 So.2d 986 (Fla.2006). We affirm the trial court's denial of relief on this claim.

Concession of Aggravating Factors
Stephens alleges that counsel conceded both the heinous, atrocious, or cruel (HAC) aggravator and the pecuniary gain aggravator to the jury during his closing argument. Stephens is mistaken as counsel did not concede either aggravator. With regard to the pecuniary gain aggravator, counsel explained to the jury that the aggravator should be merged with the murder "in the course of a felony" aggravator. Counsel explained that because Stephens had been convicted of robbery, which was one of the enumerated felonies recognized for the aggravating circumstance of murder "in the course of a felony," the crime was for financial gain, and as a result, the two aggravators should merge.
With regard to the HAC aggravator, counsel attempted to emphasize to the jury that the State had not proven the aggravator beyond a reasonable doubt. Counsel stated to the jury that they should give very little weight to the HAC aggravator because none of the medical testimonies demonstrated that Little Rob suffered from a prolonged, agonizing kind of death, which is necessary for the HAC aggravator to apply. Counsel also stated that there was no proof of enjoyment of punishment or some kind of pleasure in making Little Rob suffer the way he did.
Because counsel did not concede either aggravator, Stephens fails to demonstrate that counsel was deficient under Strickland. Accordingly, we affirm the denial of relief on this claim.

Concession of Aggravating Circumstances Through Guilty Pleas
Stephens contends that his lead counsel was ineffective for advising Stephens to plead guilty to eight counts of the indictment. Stephens claims that these guilty pleas resulted in a concession to the murder "in the course of a felony" aggravator. The United States Supreme Court in Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), held that when a defendant challenges his guilty pleas based on ineffective assistance of counsel, under the prejudice prong of Strickland, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." We acknowledged this standard in Grosvenor v. State, 874 So.2d 1176, 1181-82 (Fla.2004), and held that to determine whether a reasonable probability exists that the defendant would have insisted on going to trial, a court should examine
the totality of the circumstances surrounding the plea, including such factors as whether a particular defense was likely to succeed at trial, the colloquy between the defendant and the trial court at the time of the plea, and the difference between the sentence imposed under the plea and the maximum possible sentence the defendant faced at trial.
Stephens provided no support in his postconviction motion or at the evidentiary hearing to show that, but for counsel's errors, he would have not pled guilty and would have insisted on going to trial. He also fails to demonstrate that his guilty pleas were entered into without his permission, that counsel failed to discuss the consequences of his pleas or that he was forced to enter the guilty pleas. Further, during the plea colloquy between Stephens and the trial court, Stephens stated that he authorized his counsel to enter the guilty pleas, he understood that by entering the pleas, he was waiving certain constitutional *418 rights, he had enough time to discuss his case and decision to enter guilty pleas with his attorney, that no one was making him enter the guilty pleas, and that he was not under the influence of any drug, medication, substance, or condition that would affect his ability to think and understand the consequences of his decisions. Stephens also does not demonstrate that there was any defense to the charges for which he pled guilty that was likely to succeed at trial.
Penalty phase counsel testified at the evidentiary hearing that he was present when lead counsel discussed the charges with Stephens. He testified that lead counsel's strategy was to gain credibility with the jury and that this strategy worked because entering guilty pleas on certain charges resulted in an acquittal of some of the charges for which Stephens pled not guilty. During the penalty phase, counsel even stated during his closing arguments that the fact that Stephens pled guilty to a number of charges should be seen as mitigation. In fact, in its sentencing order, the trial court found in mitigation that Stephens entered pleas to some counts of the indictment.
Counsel is not deemed ineffective for using a strategy that benefited Stephens. See Nixon v. State, 932 So.2d 1009 (Fla. 2006). Stephens fails to show that counsel was deficient under Strickland. Accordingly, we affirm the trial court's denial of relief on this claim.

Cumulative Error
Stephens' final claim is that the cumulative effect of the alleged errors requires that he receive a new trial. However, because all of Stephens' individual claims are without merit, his cumulative error claim must fail. See Griffin v. State, 866 So.2d 1, 22 (Fla.2003) ("[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail."); see also Vining v. State, 827 So.2d 201, 219 (Fla. 2002). We affirm the trial court's denial of relief based on the allegation of cumulative error.

Ineffective Assistance of Counsel During Guilt Phase

Failure to Attend Depositions
Stephens asserts that his lead counsel failed to attend several depositions. The trial court found that such absence is presumptively deficient, and we agree. The absence of counsel at discovery depositions in a criminal case where the State is seeking the death penalty is very disturbing. However, Stephens fails to demonstrate how he was prejudiced by counsel's failure to attend these depositions. Stephens simply contends that counsel failed to attend certain depositions, but does not provide any argument to demonstrate that, but for counsel's failure to attend these depositions, there is a reasonable probability that the outcome of the trial would have been different. Because Stephens fails to satisfy the prejudice prong of Strickland, we affirm the denial of relief on this claim.

Failure to Argue Motions
Stephens contends that counsel was ineffective for failing to argue three specific motions: (1) motion for judgment of acquittal; (2) motion for a new trial; and (3) motion for a change of venue. Stephens fails to meet the Strickland standard because he fails to show that had counsel argued these motions more vigorously than simply making a bare-bones motion, the trial court would have granted them. We addressed the trial court's denial of all three motions in Stephens' direct appeal and found all three claims to be without merit. With regard to the motion for judgment of acquittal, we found that there *419 was "sufficient evidence to support Stephens' conviction for first-degree felony murder." Stephens, 787 So.2d at 753. With regard to the motion for a new trial, we found that "[t]he manifest weight of the evidence proves, at a minimum, that Stephens committed felony murder." Id. at 754. Finally, with regard to the motion for a change of venue, we held that Stephens "failed to allege facts indicating abnormal pretrial publicity." Id. at 757.
Because we rejected all three claims on the merits in Stephens' direct appeal, Stephens fails to satisfy the Strickland standard for ineffective assistance of counsel. See Melendez v. State, 612 So.2d 1366, 1369 (Fla.1992) (when this Court has previously rejected the substantive claim on the merits about which the defendant takes issue during postconviction proceedings in the guise of an ineffective assistance of counsel claim, counsel cannot be deemed ineffective for failing to make the meritless argument). Accordingly, the trial court properly denied relief on this claim.

Concession of Guilt
Stephens alleges that counsel was ineffective for pleading him guilty to first-degree murder without his permission by pleading him guilty to the underlying felony of armed kidnapping. The trial court found that it was not a reasonable strategy to plead Stephens guilty to armed kidnapping when Stephens had been charged with felony murder. We agree that counsel was deficient for pleading Stephens guilty to armed kidnapping. However, we also agree with the trial court that Stephens fails to demonstrate that counsel's deficient performance prejudiced him. Because Stephens fails to satisfy both prongs of Strickland, we deny relief on this claim.
Stephens fails to demonstrate that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). To determine whether a reasonable probability exists that Stephens would have insisted on going to trial instead of pleading guilty, we must look at the totality of the circumstances surrounding the plea. See Grosvenor v. State, 874 So.2d 1176, 1181-82 (Fla.2004).
Stephens provided no support in his postconviction motion or at the evidentiary hearing to show that, but for counsel's errors, he would have not pled guilty and would have insisted on going to trial. During the plea colloquy between Stephens and the trial court, Stephens stated that he authorized his counsel to enter the guilty pleas, he understood that by entering the pleas, he was waiving certain constitutional rights, he had enough time to discuss his case and decision to enter guilty pleas with his attorney, and that no one was forcing him to enter the guilty pleas. In addition, at trial Stephens testified and admitted to the kidnapping. Stephens testified that he planned to take Little Rob to ensure he got out of the house safely. He testified that he talked to Little Rob's father about where he was going to leave Little Rob, and that when he left the Sparrow home, he took Little Rob with him.
Accordingly, the trial court properly denied relief on this claim.

Guilty Plea on Armed Robbery Charge
Stephens asserts that counsel was ineffective for pleading Stephens guilty to the charge of armed robbery of Derrick Dixon, and later failing to file a motion to withdraw the plea. With regard to counsel pleading Stephens guilty, we have already held that Stephens fails to demonstrate that, but for counsel's error, Stephens would not have pled guilty and would have insisted on going to trial. Thus, Stephens fails to meet the prejudice prong of Strickland. *420 With regard to failing to withdraw the plea, at the end of the State's case, counsel did make a motion to withdraw Stephens' guilty plea to the charge of armed robbery and amend the charge to attempted armed robbery. However, the trial court rejected the motion to withdraw because it was not the appropriate time to file such a motion because Stephens was not on trial for this robbery. Stephens, 787 So.2d at 755. Although counsel subsequently failed to file the motion to withdraw the guilty plea, Stephens fails to demonstrate that he was prejudiced. During the defense's case, Stephens admitted to robbing Derrick Dixon. He testified that he took $20 from Derrick Dixon, and when counsel asked him about Dixon's testimony that Stephens did not take anything from him, Stephens admitted that he did in fact take money from Dixon.
Thus, Stephens fails to demonstrate that there is a reasonable probability that the outcome of the trial would have been different had counsel moved to withdraw the guilty plea to the charge of armed robbery. Accordingly, the trial court properly denied relief on this claim.

Failure to Object
Stephens asserts that counsel was ineffective for failing to object to the prosecutor's comments during both his opening statement and closing argument. Stephens specifically identifies the following comments as being objectionable: (1) during opening statement, the prosecutor repeatedly stated that the child had been "brutally and savagely murdered" adding that the victim's fate was to "slowly fry to death"; (2) during closing argument, the prosecutor opined that Stephens' testimony at trial came from a warped concern for his codefendant and then stated to the jury, "Where was the concern that he showed for a three year old child? There's the concern," at which point the prosecutor showed a photo of Little Rob; (3) during closing argument, the prosecutor's statement, "My job is to represent the State of Florida to seek justice. If the State hasn't proved the defendant's guilt beyond a reasonable doubt, then I am not sure it can be done in any case"; and (4) during closing argument, the prosecutor referred to Stephens' testimony as "theatrical, melodramatic, lying" and argued that Stephens had "bragged and lied so much and so often about so many crimes."
In order to prevail on an ineffective assistance of counsel claim on these grounds, Stephens must first show that the comments were improper or objectionable and that there was no tactical reason for failing to object. Secondly, Stephens must demonstrate that the comments deprived "the defendant of a fair and impartial trial, materially contribute[d] to the conviction, [were] so harmful or fundamentally tainted as to require a new trial, or [were] so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise." Spencer v. State, 645 So.2d 377, 383 (Fla. 1994). The trial court found that none of the comments was so prejudicial that Stephens was denied a fair trial, and we agree. When read in context, these comments were not improper and did not deprive Stephens of a fair trial.
With regard to the two statements made during opening statement, these comments were made in the context of explaining what the prosecutor expected to show through evidence that would be introduced during the trial. The prosecutor even emphasized that nothing he said during the opening statement was evidence and that the purpose of the opening statement was to give the jury an idea of the evidence that the jury would receive. We have held that "[o]pening remarks are not evidence, and the purpose of opening argument *421 is to outline what an attorney expects to be established by the evidence." Occhicone v. State, 570 So.2d 902, 904 (Fla. 1990). In such a context, the prosecutor's comments cannot be deemed improper or objectionable.
With regard to the comments made during closing argument, these comments cannot be deemed improper or objectionable when taken in the context of what the evidence established during trial. The prosecutor was properly reviewing what the evidence and testimony revealed at trial and drawing reasonable inferences from such evidence and testimony. See Griffin v. State, 866 So.2d 1, 16 (Fla.2003) (holding that in closing argument it is proper for the prosecutor "to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence"). Further, we have held that wide latitude in closing argument to a jury is permitted. See Thomas v. State, 326 So.2d 413 (Fla.1975); see also Spencer v. State, 133 So.2d 729 (Fla.1961).
The final comment, where the prosecutor described his job, was also proper because this comment was made in response to defense counsel's comment during his closing argument. Defense counsel stated that the prosecutor's job was to prove the case beyond a reasonable doubt and indicated that there was some suspicion as to whether the State had done this. In response, the prosecutor stated that the State had done its job of proving the case beyond a reasonable doubt. Such a comment is not improper. See Walls v. State, 926 So.2d 1156, 1166 (Fla.2006) (a prosecutor's comments are not improper where they fall into the category of an "invited response" by the preceding argument of defense counsel concerning the same subject).
Because the alleged comments were not improper, Stephens fails to show that he was prejudiced under Strickland. Accordingly, the trial court properly denied relief on this claim.

Delegation of Responsibilities
Stephens alleges that either through neglect or willfulness, counsel essentially delegated the role of attorney for Stephens to counsel for codefendant Cummings. In making this argument, Stephens seems to repeat certain claims of ineffective assistance of counsel, such as the failure to attend depositions and the failure to argue certain pretrial motions. We found that the trial court properly denied relief on these claims.
Stephens also alleges that counsel for Cummings conducted the vast majority of cross-examinations, and called the witness most critical to Stephens' defense, Dr. Steven Frank Dunton. With regard to the alleged failure to cross-examine witnesses, Stephens fails to demonstrate how he was prejudiced by this inaction because he does not point to any questions that counsel should have asked that were not asked by co-counsel. He simply states that counsel failed to cross-examine numerous witnesses and then lists the different witnesses. Such a bare-bones claim is not enough to demonstrate that Stephens was prejudiced under Strickland.
With regard to Dr. Dunton, the trial court found that counsel was not ineffective because it did not matter which defendant presented Dr. Dunton. We agree. Regardless of who called Dr. Dunton, Dr. Dunton's direct examination benefited both Stephens and Cummings because he rebutted the testimony of the State's medical expert, Dr. Floro, and testified that Little Rob died from hyperthermia, not suffocation or strangulation. Furthermore, counsel testified at the evidentiary hearing that although Cummings' counsel called Dr. Dunton as a witness, it *422 was Stephens' counsel who suggested they call Dr. Dunton as a medical expert. He also testified that by not calling Dr. Dunton, Stephens had a significant advantage because it preserved the right to final argument at closing for Stephens.
Accordingly, we affirm the trial court's denial of relief on this claim.

Cumulative Error
Stephens contends that the lower court erred by evaluating each of the above claims of ineffectiveness separately. Stephens argues that when the claims are evaluated cumulatively, it is clear that confidence was undermined in the outcome of his trial. Because Stephens fails to show that any of the alleged errors satisfies the two-prong Strickland standard, there are no errors to consider cumulatively. Harvey v. State, 946 So.2d 937 (Fla.2006); see also Downs v. State, 740 So.2d 506 (Fla. 1999) (where allegations of individual error are without merit, a cumulative error argument based thereupon must also fail). The trial court properly denied relief on this claim.

Conflict of Interest
Stephens contends that counsel was operating under a conflict of interest in two ways: (1) counsel's representation of a codefendant on the 1992 burglary conviction that the State was using as an aggravator, and (2) representation of Stephens and Cummings by one attorney. In Hunter v. State, 817 So.2d 786 (Fla.2002), we held that "[t]o demonstrate an actual conflict, the defendant must identify specific evidence in the record that suggests that his or her interests were compromised. A possible, speculative or merely hypothetical conflict is `insufficient to impugn a criminal conviction.'" Id. at 792 (citation omitted) (quoting Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).
Stephens first argues that counsel's representation of Stephens' codefendant, Sammie Washington, on the 1992 burglary conviction created a conflict of interest because it precluded counsel from calling Washington as a witness or taking a position adversarial to Washington in challenging the conviction. The trial court found that there was no evidence that counsel's representation of Washington negatively affected or impacted Stephens' defense, and we agree. Stephens does not point to any evidence that Washington's testimony would have been beneficial in rebutting the conviction. Furthermore, counsel's reason for not calling Washington to testify was not the alleged conflict of interest, but because counsel made a strategic decision not to challenge the conviction. Counsel testified at the evidentiary hearing that he decided not to focus on introducing evidence to possibly lessen the weight of the aggravator because he believed it could backfire. Counsel also testified that he did not even remember if he represented Washington in the 1992 burglary case. He further stated that if he had known that he represented Washington and had learned something from that representation, he would have used that information to assist Stephens. However, during the investigation of the 1992 burglary conviction, counsel did not learn anything that would have assisted him in attacking the conviction.
Stephens also alleges that because he was actually represented by the attorney for codefendant Cummings and because Cummings' and Stephens' defenses were antagonistic, his right to conflict-free counsel was violated. The record demonstrates that Stephens and Cummings had individual attorneys. Thus, Stephens fails to show that there was an actual conflict of interest.
*423 Accordingly, the trial court properly denied relief on this claim.

Motion Requesting a Jury Interview
Stephens alleges that counsel was ineffective for failing to pursue a motion requesting a jury interview. Stephens cites to an interview given to the Florida Times-Union by jury foreperson Ronald Buck in which Mr. Buck stated the jury believed that Stephens did not intend to kill the victim, "[b]ut the child died as a result of the robbery. . . . That's why we convicted him." Stephens argues that this statement by Mr. Buck establishes that the reasons for the jury's recommendation of death were inconsistent with the jury's advisory sentences. The trial court found that Mr. Buck's statement was not inconsistent with the jury's finding that Stephens played a significant role in the underlying felony and acted with reckless indifference to human life. We agree. Even though Mr. Buck did not specifically state that Stephens acted with reckless indifference to human life, his statement to the media indicates that Stephens did act with reckless disregard to human life. In fact, when we addressed Stephens' proportionality claim on direct appeal, we found that "Stephens personally committed the crimes of burglary and robbery" and that Stephens "personally kidnapped the child victim." Stephens, 787 So.2d at 760. We also stated that "[t]he record demonstrates that Stephens was indifferent to the fate of this helpless child." Id.
Because Stephens fails to demonstrate deficient performance and prejudice under Strickland, we affirm the trial court's denial of relief on this claim.
Instruction on Aggravating Factors
Stephens asserts that the trial court committed fundamental error by instructing the jury regarding the HAC aggravator and the pecuniary gain aggravator. Initially, we note that a substantive challenge to the HAC and pecuniary gain jury instructions is procedurally barred because Stephens could have raised these claims on direct appeal. Thompson v. State, 759 So.2d 650 (Fla.2000). Additionally, the claim is without merit.
Stephens first argues that the HAC aggravator did not apply because he lacked the requisite intent to kill and because the trial court did not find, beyond a reasonable doubt, that the murder was especially heinous, atrocious, or cruel. However, the HAC aggravator does not focus on the intent and motivation of the defendant, but instead on the "means and manner in which death is inflicted and the immediate circumstances surrounding the death." Brown v. State, 721 So.2d 274, 277 (Fla. 1998). The record demonstrates that there was competent, substantial evidence to support the HAC jury instruction. Dr. Floro testified that in his expert opinion, Little Rob died of asphyxiation, which can be either strangulation or suffocation. Stephens, 787 So.2d at 752. We have consistently upheld the HAC aggravator in cases where a conscious victim was strangled. See Bowles v. State, 804 So.2d 1173 (Fla.2001); see also Mansfield v. State, 758 So.2d 636 (Fla.2000).
Stephens also argues that the pecuniary gain aggravator did not apply because pecuniary gain was not the primary motive for the killing and because it was not proven beyond a reasonable doubt. Stephens is mistaken. In order to establish the pecuniary gain aggravator, the State "must prove beyond a reasonable doubt that the murder was motivated, at least in part, by a desire to obtain money, property, or other financial gain." Finney v. State, 660 So.2d 674, 680 (Fla.1995) (emphasis added). The record demonstrates that there was competent, substantial evidence to support the pecuniary gain jury *424 instruction. Stephens pled guilty to armed burglary of the Sparrow home and three counts of robbery. Stephens also testified that when he entered the home, his intent was to rob anyone in the house, and that, in fact, he did rob the people in the house. However, Stephens argues that because the burglary of the Sparrow home and robbery of its occupants were over by the time the murder was committed, pecuniary gain could not be considered as an aggravator. We rejected a similar argument in Parker v. State, 873 So.2d 270 (Fla.2004). We held that the pecuniary gain aggravator is applicable where the "murder was the culmination of a course of events that began when appellant went into a store, robbed the clerk at gunpoint, and abducted her from the store." Id. at 290 (quoting Copeland v. State, 457 So.2d 1012, 1019 (Fla.1984)). Little Rob's murder in the instant case was the culmination of a course of events that began when an armed Stephens entered the Sparrow home, robbed the occupants, and kidnapped the child for the purpose of trying to escape.
Because Stephens fails to demonstrate any fundamental error, we affirm the trial court's denial of relief on this claim.

PETITION FOR WRIT OF HABEAS CORPUS
Stephens raises seven claims in his petition for habeas corpus. He contends that (1) appellate counsel was ineffective for failing to raise a prosecutorial misconduct claim; (2) appellate counsel was ineffective for failing to argue that instructing the jury on the HAC aggravator was fundamental error; (3) appellate counsel was ineffective for failing to argue that instructing the jury on the pecuniary gain aggravator was fundamental error; (4) the murder "in the course of a felony" aggravator is unconstitutional, and appellate counsel was ineffective for failing to raise this claim; (5) the aggravating circumstance of "the victim of the capital felony was a person less than 12 years of age" is unconstitutional, and appellate counsel was ineffective for failing to raise this claim; (6) the trial court failed to conduct an inquiry under Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973); and (7) the execution of Stephens would constitute cruel and unusual punishment. As explained below, Stephens is not entitled to habeas relief on any of these claims.

Ineffective Assistance of Appellate Counsel
Claims of ineffective assistance of appellate counsel are properly raised in a petition for writ of habeas corpus addressed to the appellate court that heard the direct appeal. See Rutherford v. Moore, 774 So.2d 637 (Fla.2000). The standard for proving ineffective assistance of appellate counsel follows the same two-prong analysis established for an ineffective assistance of trial counsel claim under Strickland. See Wilson v. Wainwright, 474 So.2d 1162 (Fla.1985). Thus, when evaluating a claim for ineffective assistance of appellate counsel, this Court must determine: (1) whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance, and (2) whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result. See Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); accord Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000); Thompson v. State, 759 So.2d 650, 660 (Fla.2000).
In raising a claim of ineffective assistance of counsel, "[t]he defendant has the burden of alleging a specific, serious omission or overt act upon which the claim *425 of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069; see also Knight v. State, 394 So.2d 997, 1001 (Fla.1981). Furthermore, a petitioner cannot prevail on a claim of ineffective assistance of appellate counsel "[i]f a legal issue `would in all probability have been found to be without merit' had counsel raised the issue on direct appeal." Rutherford, 774 So.2d at 643 (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)). Nor can appellate counsel be deemed ineffective for failing to prevail on an issue raised and rejected on direct appeal. See Spencer v. State, 842 So.2d 52 (Fla.2003).

Prosecutorial Misconduct
Stephens alleges that appellate counsel was ineffective when he failed to raise a claim of prosecutorial misconduct on direct appeal. Stephens contends that the prosecutor's comments in his opening statement and closing arguments during the guilt phase proceeding and the prosecutor's comments in his closing arguments during the penalty phase proceeding presented impermissible considerations to the jury, misstated the law and facts, and were inflammatory and improper. However, as we said in Stephens' postconviction claim, the prosecutor's comments were not improper or objectionable. Had appellate counsel raised this issue on appeal, the issue would have in all probably been found to lack merit. As a result, Stephens fails to demonstrate ineffective assistance of appellate counsel, and is not entitled to habeas relief on this claim.

Jury Instruction on HAC Aggravator
Stephens contends that the trial court committed fundamental error by instructing the jury on the HAC aggravator when this aggravator did not apply. Stephens also argues that appellate counsel was ineffective for not raising this claim on direct appeal. As we said in Stephens' postconviction claim, the trial court did not commit any error in instructing the jury on this aggravator because the aggravator was supported by competent, substantial evidence adduced at trial. Had appellate counsel raised this claim on direct appeal, the claim would have in all probability been found to be without merit. Stephens is not entitled to habeas relief on this claim.

Jury Instruction on Pecuniary Gain Aggravator
Stephens contends that the trial court committed fundamental error by instructing the jury on the pecuniary gain aggravator when this aggravator did not apply. Stephens also argues that appellate counsel was ineffective for not raising this claim on direct appeal. As we said in Stephens' postconviction claim, the trial court did not commit any error in instructing the jury on this aggravator because the aggravator was supported by competent, substantial evidence adduced at trial. Had appellate counsel raised this claim on direct appeal, the claim would have in all probability been found to be without merit. Accordingly, Stephens is not entitled to habeas relief on this claim.

"In the Course of a Felony" Aggravator
Stephens argues that the aggravating circumstance that the murder was committed in the course of committing a felony is unconstitutional because it constitutes an automatic aggravator and does not narrow the class of persons eligible for the death penalty. This claim is without merit. We have repeatedly found the murder "in the course of a felony" aggravator to be constitutional. Ault v. State, 866 So.2d 674 (Fla. 2003); Hitchcock v. State, 755 So.2d 638 (Fla.2000); Blanco v. State, 706 So.2d 7 (Fla.1997). We have also rejected constitutional challenges to the murder "in the course of a felony" aggravator based on *426 equal protection, due process, and cruel and unusual punishment. Ault, 866 So.2d at 686 (citing Clark v. State, 443 So.2d 973, 978 (Fla.1983); Menendez v. State, 419 So.2d 312, 314-15 (Fla.1982)).
Stephens also contends that the trial court erred in instructing the jury that the aggravating circumstance of murder "in the course of a felony" was sufficient by itself to justify a death sentence in a felony murder case. However, the record demonstrates that Stephens is mistaken. After reading the five possible aggravating circumstances to the jury, the trial court properly instructed the jury, in accord with the standard jury instructions, that "proof of one or more aggravating circumstances does not by itself dictate a death recommendation even in the absence of mitigation evidence."
Because this claim is without merit, appellate counsel cannot be deemed ineffective for failing to raise the claim. See Rutherford, 774 So.2d at 643. Habeas relief is denied on this claim.

"Victim Under 12 Years of Age" Aggravator
Stephens argues that the aggravating circumstance and jury instruction for a "victim under 12 years of age" is unconstitutionally overinclusive, arbitrary, and automatically applicable to homicides committed regardless of the circumstances. Stephens did not object at trial to the constitutionality of this aggravator in order to preserve the claim for appeal. Thus, appellate counsel cannot be deemed ineffective for failing to raise this claim on direct appeal because even if he had done so, this Court would have declined to address the merits of the claim. See Lukehart v. State, 776 So.2d 906 (Fla.2000). This claim is also without merit because Stephens can show no error in instructing the jury on this aggravator because the record undisputedly proves that the child victim, at the age of three years and four months, was less than twelve years old at the time of the murder. Accordingly, habeas relief is denied on this claim.

Nelson Inquiry
Stephens contends that he was denied his constitutional rights when the trial court failed to conduct a Nelson[8] inquiry to determine if his counsel was competent to represent him. Stephens alleges that a note he provided to the trial court on October 20, 1997, contained statements of dissatisfaction regarding trial counsel's representation and his competency. Stephens argues that this note was not contained in the record on direct appeal, and that the contents of the note mandate a full Nelson inquiry. However, Stephens fails to establish that the trial court's prior Nelson inquiry was insufficient.
At the October 20, 1997, hearing, after Stephens handed his note to the trial court, the court questioned Stephens regarding his problems with counsel. Stephens complained of trial counsel's lack of contact with him and his family. The court agreed and encouraged counsel to visit Stephens more often and to communicate with Stephens' family. Stephens also complained that he did not have copies of any of the paperwork in his case, and the court reassured Stephens that he would be provided with all the documents pertaining to his case. However, the court properly stated that Stephens had not raised an issue of counsel's competence. On direct appeal, we found no error because "Stephens voiced dissatisfaction with counsel but did not actually question counsel's competency. Under such circumstances a full Nelson inquiry is *427 not necessary." Stephens, 787 So.2d at 758. We also found that the trial court "made an adequate inquiry into the complaint and properly remedied the problem by telling counsel to visit Stephens more frequently and provide him with the proper records. Moreover, the record reflects Stephens subsequently expressed satisfaction with counsel." Id. (citation omitted). Because Stephens did subsequently express satisfaction with counsel, any error committed by the trial court is harmless. See Scull v. State, 533 So.2d 1137 (Fla. 1988) (stating any failings of the inquiry were mooted by defendant's expressions of satisfaction with counsel's representation).
Although Stephens offered his note into evidence during postconviction proceedings, nothing about the discovery of this note alters the factual findings reached by the trial court or the findings of this Court on direct appeal. Stephens is not entitled to habeas relief on this claim.

Competency to be Executed
Stephens contends that because he suffers from brain damage, mental impairment, and has a mental and emotional age of less than eighteen years, the application of the death penalty in his case is cruel and unusual punishment. Stephens makes a similar claim to that in Hill v. State, 921 So.2d 579, 584 (Fla.2006), where Clarence Hill argued that "his mental and emotional age places him in a category of persons for whom it is unconstitutional to impose the death penalty under Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005)." This Court found that the claim was without merit and that Roper did not apply to Hill because Hill was twenty-three years old when he committed the crimes. The Court emphasized that Roper only prohibits the execution of defendants whose chronological age is below eighteen. Similar to Hill, Stephens' chronological age at the time he committed the crimes in this case was twenty-three, thus Roper does not apply to him. Habeas relief is denied on this claim.

CONCLUSION
For the reasons stated above, we affirm the trial court's denial of postconviction relief, and we deny the petition for a writ of habeas corpus.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Seven people were at the house when Stephens first entered including: (1) Robert Sparrow III; (2) Robert Sparrow Jr., the owner of the house and Robert Sparrow, III's father; (3) Consuelo Brown, Robert Sparrow III's mother; (4) Kahari Graham, Robert Sparrow III's six-year old half-brother and Consuelo Brown's other son; (5) Tracey Williams; (6) Derrick Dixon; and (7) Tammy Cobb. Two other victims entered the house after Stephens: (1) David Cobb; and (2) Roderic Gardner.
[2] The record indicates that there were three or four other people with Stephens at the time he committed these crimes. However, Stephens refused to cooperate with the authorities in their efforts to identify the other individuals. One of the individuals, Horace Cummings, turned himself in to the police and was tried with Stephens. The other two individuals were never apprehended. Stephens testified at trial that Cummings and the other unidentified individuals went to the house to buy drugs and were unaware of his plan to rob the occupants.
[3] Many of the eyewitnesses testified that Stephens showed his ID and said he was taking Little Rob with him as insurance. Sparrow Jr. testified Stephens agreed he would leave the child at the corner if he was not followed. Stephens also testified he agreed to leave the child somewhere, but he did not know what location the child's father had referred to in his testimony.
[4] Asphyxiation can be either strangulation or suffocation.
[5] The issues raised were: (1) the trial court erred in denying a motion for judgment of acquittal; (2) the trial court erred in denying a motion for new trial; (3) the trial court erred in denying a motion to withdraw the robbery plea involving the robbery of Derrick Dixon or erred in failing to reduce the charge to attempted armed robbery; (4) the trial court erred in denying the defendant's special instruction on his theory of defense; (5) the trial court erred in denying the defendant's motion for a change of venue; (6) the trial court erred in failing to conduct an inquiry under Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973); (7) the trial court erred in allowing the prosecutor to question the defendant concerning a statement about the electric chair; (8) the defendant's sentence is unlawful under Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987); (9) the trial court erred in its assessment of aggravating and mitigating factors; (10) the trial court erred in failing to declare section 922.10, Florida Statutes (1997), unconstitutional; and (11) the trial court erred in failing to declare section 921.141, Florida Statutes (1997), unconstitutional.
[6] Huff v. State, 622 So.2d 982 (Fla.1993).
[7] Section 921.141(7) states:

Once the prosecution has provided evidence of the existence of one or more aggravating circumstances as described in subsection (5), the prosecution may introduce, and subsequently argue, victim impact evidence to the jury. Such evidence shall be designed to demonstrate the victim's uniqueness as an individual human being and the resultant loss to the community's members by the victim's death. Characterizations and opinions about the crime, the defendant, and the appropriate sentence shall not be permitted as a part of victim impact evidence.
[8] Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973).