PER CURIAM.
Jerry Michael Wickham appeals an order of the circuit court denying his motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.850 and petitions this Court for a writ of habeas corpus.[1] For the reasons that follow, we affirm the denial of his postconviction motion and deny his habeas petition.
I. FACTS AND PROCEDURAL HISTORY
Wickham was convicted of the 1986 first-degree murder of Morris “Rick” Fleming and was sentenced to death. We previously summarized the facts of this case in the Court’s opinion on direct appeal:
In March 1986, Wickham together with family members and friends, including children, were driving along Interstate 10 when they discovered they were low on money and gas. While at least some members of the party felt they should stop at a church for help, Wickham and others decided they would obtain money through a robbery. The group continued along Interstate 10 and exited at Thomasville Road in Tallahassee.
Proceeding north almost to the Georgia border, the group decided to trick a passing motorist into stopping. They placed one of the vehicles conspicuously on the roadside. One of the women, apparently accompanied by some of the children, then flagged down the victim, Morris “Rick” Fleming. The woman told Fleming her car would not work. Wickham later told a fellow inmate that he had deliberately used the woman and children because “that’s what made the guy stop and that’s what I was interested in.”
After examining the car, Fleming told the woman he could find nothing wrong with it. At this time, Wickham came out of a hiding place nearby and pointed a gun at Fleming. Fleming then turned and attempted to walk back to his car, but Wickham shot him once in the back. The impact spun Fleming around, and Wickham then shot Fleming again high in the chest. While Fleming pled for his life, Wickham shot the victim twice in the head.
Wickham then dragged the body away from the roadside and rummaged through Fleming’s pockets. He found *850 only four dollars and five cents. At this point, Wickham criticized the woman-decoy for not stopping someone with more money.
The group drove to a gas station and put two dollars’ worth of gas in one of the cars, and two dollars’ worth in a gas can. Wickham changed his clothes and threw his bloodstained pants and shoes into a dumpster. Wickham directed one of the others to throw the empty bullet casings and live rounds out the window. A short while later, the group drove past the murder scene and saw that the police and ambulances had begun to arrive. They then headed back south and drove to Tampa, obtaining more gas money by stopping at a church along the way.
At trial, defense counsel submitted extensive evidence about Wickham’s prior psychological problems, which included extended periods of confinement in psychiatric hospitals during his youth. There also was evidence that Wickham was alcoholic, had suffered an abusive childhood, and that his father had deserted the family.
Other evidence, however, indicated that Wickham was not legally insane during the events in question and had not been drinking at the time of the murder, and that he had not been confined in mental institutions for many years. One expert, Dr. Harry McClaren, stated that Wickham both appreciated the criminality of the murder and chose to engage in this conduct despite his awareness of its nature. Dr. McClaren stated his opinion that Wick-ham had murdered Fleming to avoid arrest, because Wickham previously had been incarcerated for another robbery in Michigan. Although Dr. McClaren agreed that Wickham suffered from alcohol abuse, an antisocial personality disorder, and schizophrenia in remission, he concluded that these conditions did not impair Wickham’s ability to understand the nature of his actions in murdering Fleming.
After being convicted of the murder, the jury recommended by a vote of eleven to one that Wickham be sentenced to death. The trial judge concurred after finding six aggravating circumstances and no mitigating circumstances.[2]
Wickham v. State, 593 So.2d 191, 192-93 (Fla.1991).
On direct appeal, we affirmed Wick-ham’s conviction and death sentence.[3] Id. at 194. Subsequently, Wickham filed a motion for postconviction relief, and the *851 trial court denied all of his claims after an evidentiary hearing in 2004. Wickham v. State, 998 So.2d 593 (Fla.2008). Wickham appealed the denial, and we remanded for a new evidentiary hearing, finding that Wickham’s motion to disqualify all Second Circuit judges from deciding his postcon-viction motion should have been granted because Wickham’s trial counsel ran for circuit court judge while acting as Wick-ham’s counsel and became a Second Circuit judge shortly after Wickham’s trial. Id. at 596.
A new evidentiary hearing was held in 2010 and was presided over by a judge from outside the Second Circuit. Following the evidentiary hearing, the circuit court issued an order denying postconviction relief on all claims, concluding the claims were either procedurally barred, refuted by the record, or otherwise without merit.
Wickham appeals the denial of his post-conviction motion and petitions this Court for a writ of habeas corpus.
II. POSTCONVICTION MOTION
A. Brady and Giglio Claims
Wickham raises multiple claims alleging that the State withheld material evidence concerning several of the State’s witnesses in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Additionally, he claims that the State presented, or failed to correct, false or misleading testimony in violation of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).[4] After outlining the Brady and Giglio standards, we will address each claim in turn as it relates to each witness.
Standards for Brady and Giglio Claims
In order to establish a Brady violation, a defendant must show the following: (1) evidence favorable to the defendant, either exculpatory or impeaching; (2) was willfully or inadvertently suppressed by the State; and (3) because the evidence was material, the defendant was prejudiced. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); see also Duest v. State, 12 So.3d 734, 744 (Fla.2009). To establish the materiality prong, the defendant must demonstrate “a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). “A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” Id. With regards to the second prong of Brady, “[t]here is no Brady violation where the information is equally accessible to the defense and the prosecution, or where the defense either had the information or could have obtained it through the exercise of reasonable diligence.” Floyd v. State, 18 So.3d 432, 451 (Fla.2009)(quoting Provenzano v. State, 616 So.2d 428, 430 (Fla.1993)).
To establish a Giglio violation, three elements must be shown: (1) the prosecutor presented or failed to correct false testimony; (2) the prosecutor knew it was false; and (3) the false testimony was material. Guzman v. State, 868 So.2d 498, 505 (Fla.2003). (citing Ventura v. State, 794 So.2d 553, 562 (Fla.2001)). With regards to the third prong, “the false evidence is material ‘if there is any reasonable [possibility] that the false testimony could have affected the judgment of the jury.’ ” Id. at *852 506 (quoting United States v. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). The State bears the burden of proving that the false testimony was not material by demonstrating that it was harmless beyond a reasonable doubt. See id.; see also Johnson v. State, 44 So.3d 51, 64-65 (Fla.2010).
Additionally, because both Brady and Giglio claims present mixed questions of law and fact, this Court applies a mixed standard of review, deferring to the trial court’s factual findings that are supported by competent, substantial evidence and reviewing the application of the law to the facts de novo. Sochor v. State, 883 So.2d 766, 785 (Fla.2004).

1. Co-defendant Tammy Jordan

Brady Claims
Wickham contends that the State violated Brady by (1) failing to disclose the prosecutor’s hand-written notes made during plea negotiations with Tammy Jordan’s attorneys, and (2) failing to disclose evidence of Tammy’s previous arrest and guilty plea for felony burglary in Hillsbor-ough County. We affirm the circuit court’s denial of these claims.
During the guilt phase of the trial, Tammy was the only co-defendant to testify that Wickham had said there might be a killing involved in the robbery prior to the crime occurring. Wickham argues that Tammy’s testimony that he made this “killing statement” prior to the crime was the primary support for the CCP aggravator, and the prosecutor’s notes were valuable impeachment evidence because they indicate that the first time Tammy ever made this statement was in the context of plea negotiations. The circuit court denied this claim finding that Wickham could not establish the materiality prong of Brady. We agree.
At trial, Wickham’s counsel thoroughly cross-examined Tammy regarding her prior statements and insinuated that she fabricated Wickham’s alleged killing statement for the purposes of entering a plea deal. Furthermore, Wickham’s other co-defendants (Jimmy Jordan, Sylvia Wickham, and Larry Schrader) all testified at trial that Wickham did not say anything about killing anyone before the robbery.
Moreover, other evidence supporting CCP would not have been affected by this impeachment. Specifically, Dr. McClaren, the State’s expert, testified at trial that Wickham had described the details of the crime to him, including the fact that Wick-ham remembered saying “somebody might get killed” when discussing the idea of robbing someone. And, two of Wickham’s former cellmates, Michael Moody and John Hanvey, testified at trial that Wickham told them he killed Fleming so that there would not be any witnesses. Furthermore, Larry testified that Wickham had told him prior to the crime that he was using wire-cutter ammunition so that ballistics could not be traced back to the gun. More importantly, as we noted on direct appeal, “[w]hile the murder of Fleming may have begun as a caprice, it clearly escalated into a highly planned, calculated, and prearranged effort to commit the crime. It therefore met the standard for cold, calculated premeditation ... even though the victim was picked at random.” Wickham, 593 So.2d at 194 (citations omitted). Therefore, even if the notes had been disclosed, there is no reasonable probability that the outcome would have been different. Our confidence in the outcome is not undermined.
Accordingly, because Wickham has failed to establish the materiality prong of Brady, we affirm the circuit court’s denial of this claim.
*853 Additionally, Wickham claims that the State committed a Brady violation by failing to disclose Tammy’s arrest and guilty plea for felony burglary in Hillsborough County. The circuit court denied this claim, and we affirm that denial.
First, Wickham failed to raise this claim in his postconviction motion; therefore, it was not preserved. See Green v. State, 975 So.2d 1090, 1104 (Fla.2008) (holding that the defendant’s ineffective assistance of counsel claim was barred because he did not raise it in his postconviction motion and it was not addressed by the trial court); Henyard v. State, 883 So.2d 753, 759 (Fla.2004) (“Initially, we would note that this specific claim was not made in [the defendant’s] postconviction motion, and therefore it is procedurally barred.”).
Second, there was no Brady violation because the State did not suppress the evidence. Tammy stated in her pre-trial deposition, at which defense counsel was present, that she had previously been arrested twice, once for breaking and entering and once for theft, but that she had not gone to court and did not know what had happened with regard to those charges. Accordingly, because the defense had the information concerning Tammy’s prior arrests, there was no Brady violation, and we affirm the circuit court’s denial of this claim. See Floyd, 18 So.3d at 451 (“[T]here is no Brady violation where the information is equally accessible to the defense and the prosecution, or where the defense either had the information or could have obtained it through the exercise of reasonable diligence.” (quoting Proven-zano, 616 So.2d at 430)).
Giglio Claim
Additionally, Wickham asserts that the State violated Giglio by falsely stating during penalty phase closing arguments that Tammy had never been in trouble before. We affirm the circuit court’s denial of this claim.
First, this claim was not preserved because Wickham failed to raise it in his postconviction motion. See Green, 975 So.2d at 1104; Henyard, 883 So.2d at 759. Second, the claim is without merit because the statement was not material.
The statement was not made in reference to Tammy’s credibility, but rather was a passing reference to the degree of involvement of co-defendants Tammy, Jimmy, and Sylvia as compared to Wickham and was not a focus of the closing arguments or of the trial. Furthermore, the jury was instructed that statements made during closing arguments were not evidence and were not to be treated as such by the jury in reaching a verdict.
Moreover, Tammy’s testimony was significantly impeached at trial in several respects. First, defense counsel pointed out that Tammy had not initially told police about Wickham’s alleged killing statement and implied that she fabricated this testimony. Second, he pointed out that Tammy had entered a plea deal with the State in exchange for her testimony, and he pointed out multiple inconsistencies between her previous statements and her current trial testimony. More importantly, the State’s case did not hinge on the testimony of Tammy. As previously discussed, there was trial testimony from other witnesses that' supported the, CCP aggravator and established Wickham’s significant role in the crime. Therefore, the prosecutor’s statement that Tammy had never been in trouble before was harmless beyond a reasonable doubt. There is no reasonable possibility that it could have affected the verdict.
*854 Accordingly, we affirm the circuit court’s denial of this claim.

2. Wallace Boudreaux

Brady Claims
Wickham alleges that the State violated Brady when it withheld (1) a plea agreement with Wickham’s former cellmate, Wallace Boudreaux, (2) evidence of an attempt by Boudreaux to escape from jail, and (3) a pre-sentence investigative report in which Captain Schleich of the Leon County jail described Boudreaux as a very dangerous person in whom he would not trust. We disagree.
First, these claims were not preserved because Wickham did not raise them in his postconviction motion. See Green, 975 So.2d at 1104; Henyard, 888 So.2d at 759. Furthermore, these claims lack merit because Wickham failed to establish that the State suppressed the evidence or that he was prejudiced as a result of the suppression of material evidence as required under Brady.
The prosecutor testified at the ev-identiary hearing that he did not have knowledge of any plea agreement involving Boudreaux and certainly would have disclosed it if he did. Additionally, Wick-ham’s trial counsel testified at the eviden-tiary hearing that he was not aware, even now, of any plea deals made with Bou-dreaux. With regard to the pre-sentence report, the prosecutor testified that he did not recall ever seeing Boudreaux’s pre-sentence report and had no recollection as to whether he knew it existed or whether he had ever tried to obtain a copy. As for Wickham’s claim regarding Boudreaux’s attempt to escape from jail, Wickham failed to question the prosecutor regarding this matter at the evidentiary hearing. Thus, Wickham failed to establish that the State suppressed any of the alleged evidence concerning Boudreaux.
Additionally, Wickham failed to establish the materiality prong of Brady. On cross-examination at trial, Boudreaux admitted that he was currently in jail for escape, conspiracy to commit first-degree murder, and grand theft, that he had been incarcerated three times previously, and that he had attempted to escape from jail on prior occasions. Furthermore, trial counsel fully explored the possibility that Boudreaux was testifying in order to receive a “break” in his case.
More importantly, Boudreaux’s trial testimony was cumulative to that of other witnesses. Specifically, Boudreaux’s testimony regarding the crime was consistent with the testimony of Wickham’s co-defendants, and his testimony regarding the plan to escape from the Leon County jail was consistent with that of Wickham’s former cellmate, John Hanvey, and Wick-ham’s friend, Harold Bennett.
Accordingly, there is no reasonable probability that disclosure of any of the alleged evidence would have resulted in a different verdict. Our confidence in the outcome is not undermined. We affirm the circuit court’s denial.
Giglio Claim
Next, Wickham argues that the State violated Giglio by knowingly presenting and failing to correct Boudreaux’s testimony that he was not receiving any benefit for testifying against Wickham. We disagree.
First, this claim was not preserved because Wickham failed to raise this claim in his postconviction motion. See Green, 975 So.2d at 1104; Henyard, 883 So.2d at 759. Second, Wickham would not be entitled to relief because Bou-dreaux’s testimony was not false. Specifically, Boudreaux was asked on re-direct if *855 there was anything the court was going to do for him “at this time,” and he confirmed that he had already been sentenced and had received an “extensive sentence.” A review of the record confirms that, by the time he testified in Wickham’s trial, Bou-dreaux had been sentenced on the charges against him; therefore, his testimony was not false. Accordingly, we deny relief.

3. John Hanvey

Brady Claims
Next, Wickham argues that the State withheld evidence of a plea agreement with Wickham’s former cellmate, John Hanvey, and evidence of Hanvey’s prior forgery conviction. We affirm the circuit court’s denial of relief.
First, Wickham’s claim concerning Hanvey’s prior forgery conviction was not preserved because Wickham failed to raise it in his postconviction motion. See Green, 975 So.2d at 1104; Henyard, 883 So.2d at 759. Aside from that, Wick-ham failed to present any evidence or tesr timony in support of this claim at the 2010 evidentiary hearing. Therefore, his allegations are merely eonclusory and speculative, and he has not met his burden of establishing this claim. See Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000) (noting that “[t]he defendant bears the burden of establishing a prima facie case based upon a legally valid claim” and eonclusory allegations are not sufficient); see also Jones v. State, 845 So.2d 55, 64 (Fla.2003) (“Postconviction relief cannot be based on speculative assertions.”).
Second, with regard to Wickham’s claim concerning Hanvey’s plea agreement, he has failed to establish that the State suppressed the evidence. The prosecutor testified that he was aware of his obligations under Brady and that he would have disclosed any deal in which Hanvey was going to receive a benefit in exchange for testifying against Wickham. Additionally, he testified that he did not have any secret deals that were not disclosed to the defense.
Furthermore, the evidence was not material, and Wickham cannot demonstrate prejudice because the jury was made aware of the fact that Hanvey was in jail on other charges, which exposed the possibility that he might have had other motives for testifying, including the prospect of receiving a plea deal. Moreover, Hanvey’s trial testimony was cumulative to that of other witnesses. Therefore, there is no reasonable probability of a different outcome had the alleged evidence been disclosed to the jury. Our confidence in the outcome is not undermined.
Accordingly, we affirm the circuit court’s denial of this claim.
Giylio Claim
In this claim,- Wickham argues that the State violated Giglio because it failed to correct Hanvey’s allegedly misleading trial testimony that he was in jail for escape and aggravated battery and that the escape involved walking away from a work release center. We deny relief because Hanvey’s testimony was not false.
Specifically, on cross-examination, Hanvey was asked why he was in jail, and he testified truthfully that he was in jail for escape and aggravated battery. He was not questioned about the details of his crimes and did not volunteer the details, but that does not make his .testimony false. He also testified that his escape charge stemmed from escape from a work release center, which the prosecutor confirmed at the evidentiary hearing. Thus, Hanvey’s testimony was truthful, and the jury was fully aware that these were the charges against him.
*856 Accordingly, we deny relief because Wickham did not establish the first prong of Giglio.

4. Michael Moody

Brady Claim
Next, Wickham claims that the State failed to disclose a plea deal in which a former cellmate, Michael Moody, received a reduced sentence in exchange for his testimony against Wickham. We affirm the circuit court’s denial of relief.
Initially, we agree with the circuit court that this claim was not preserved because Wickham failed to raise it in his postconviction motion. See Green, 975 So.2d at 1104; Henyard, 883 So.2d at 759. Furthermore, this claim is without merit because the evidence was not material evidence that prejudiced Wickham. At trial, Moody testified that he had approached the State in hopes of getting a deal and that he had in fact made a deal with the State in exchange for his testimony against Wickham. Therefore, the jury was made fully aware that Moody had entered a plea deal with the State and of the sentence he received. Moreover, Moody’s trial testimony was cumulative to that of other witnesses. There is no reasonable probability of a different outcome had this evidence been disclosed to the jury. Our confidence in the outcome is not undermined.
Accordingly, we affirm the circuit court’s denial of relief.
Giglio Claim
Next, Wickham argues that the State committed a Giglio violation by failing to correct Moody’s testimony that he had received the maximum sentence for his crimes when his sentence was amended as a result of his plea deal so that his ten-year sentences would run concurrently. We disagree.
First, this claim was not preserved because Wickham did not raise it in his postconviction motion. See Green, 975 So.2d at 1104; Henyard, 883 So.2d at 759. Second, the claim is without merit because the testimony was not material. The jury was made aware that he had entered into a plea deal and of the sentence he received. Therefore, there is no reasonable possibility that Moody’s statement that he thought he received the maximum sentence affected the outcome. It was harmless beyond a reasonable doubt.
Accordingly, we deny relief.

5. Sylvia Wickham and Matthew Norris

Brady Claims
Wickham argues that the State violated Brady by allegedly suppressing evidence of (1) a tape recording of Matthew Norris’ interview with police, and (2) the prosecutor’s hand-written notes of statements made by Matthew and Sylvia Wickham. Wickham claims that the recording and the notes are exculpatory because they indicate that co-defendant Larry Schrader played a larger role in the planning and execution of the robbery than was presented at trial. We disagree and affirm the circuit court’s denial of relief because Wickham has failed to establish all of the elements of Brady.
First, Wickham has failed to present any proof that the recorded statement actually exists or that the recorded statement contains impeaching or exculpatory evidence. At the evidentiary hearing, the prosecutor testified that the notation “taped” next to the name “Matthew Norris” in his notes could have been indicating that the statement was taped, but that he did not recall what the notes were referring to, the context of the notes, or what he was attempting to document. Thus, *857 Wickham failed to produce any evidence that the tape actually exists. Therefore, the circuit court properly denied this claim on this basis alone. See Wyatt v. State, 71 So.3d 86, 106 (Fla.2011) (denying defendant’s Brady claim because he failed to establish “the existence of evidence [for the State] to withhold”).
Second, Wickham cannot establish that this evidence was material and that he was prejudiced because Larry’s role in the murder and robbery was fully explored at trial, and the evidence presented clearly established that Wickham had a greater degree of involvement than his co-defendants. Specifically, Larry admitted at trial that he participated in the planning of the robbery, and that he, Wickham, and Jimmy Jordan each had a gun and were hiding in the woods when the victim stopped. However, as we noted on direct appeal, testimony was presented that established Wickham was the sole shooter, and that after shooting Fleming multiple times he dragged the body away from the road and robbed him, obtaining only four dollars and five cents, then he disposed of his bloody clothes at a gas station, and instructed others to throw the shell casings and live ammunition out the window as they left the area. See Wickham, 598 So.2d at 192-93. Therefore, even if the recording exists, there is no reasonable probability of a different outcome. Our confidence in the outcome is not undermined.
Accordingly, we affirm the circuit court’s denial of this claim.
Additionally, we deny Wickham’s claim that the State violated Brady by failing to disclose the prosecutor’s handwritten notes because it is without merit. Specifically, Wickham alleges that two statements in the prosecutor’s notes— “Larry asked them to flag someone down” and ‘Wickham, Larry, and Jimmy came out of the woods,” — indicate that Larry played a larger role in the crime. However, the first statement is consistent with Tammy’s trial testimony that both Wick-ham and Larry “volunteered” her to flag someone down. And the second statement is refuted by the record because all of the witnesses who were present on the day of the murder testified at trial that Wickham emerged from the woods alone and was the sole shooter. Therefore, even if the prosecutor’s notes had been disclosed to the jury, there is no reasonable probability that the outcome would have been different. Our confidence in the outcome is not undermined.
Accordingly, we affirm the circuit court’s denial.[5]
B. Ineffective Assistance of Counsel

1. Failure to Conduct an Adequate Investigation and Present Mitigation

Next, Wickham contends that his trial counsel was ineffective for failing to conduct an adequate investigation and present mitigation ' evidence during the penalty phase. We affirm the circuit court’s denial of this claim.
Following the United States Supreme Court’s decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court described the two requirements of ineffective assistance of counsel as follows:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range *858 of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Bolin v. State, 41 So.3d 151, 155 (Fla.2010)(quoting Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986)).
The first prong of Strickland requires that the defendant establish that counsel’s performance was deficient. In reviewing counsel’s performance, there is a strong presumption that the performance was not ineffective, and the defendant bears the burden of overcoming this presumption. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Moreover, “[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” Id.
The second prong of Strickland is prejudice. In order to prove prejudice, the defendant must show that “there is a reasonable probability that, but for counsel’s [deficient performance], the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Franqui v. State, 59 So.3d 82, 95 (Fla.2011)(quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court’s factual findings as long as they are supported by competent, substantial evidence and reviewing the legal conclusions de novo. See Sochor, 883 So.2d at 771-72.
In this case, Wickham failed to establish either deficiency or prejudice. A review of the record reveals that trial counsel conducted a thorough investigation and presented evidence of substantial mental health mitigation at trial. Specifically, trial counsel collected all of Wickham’s mental health records and presented extensive testimony from clinical psychologist, Dr. Carbonell, regarding Wickham’s mental conditions, the effect those conditions had on his behavior, and the severe abuse he suffered as a child. Additionally, trial counsel presented the testimony of two of Wickham’s sisters who testified that Wickham had suffered severe physical abuse as a child and had a history of mental health problems.
Furthermore, trial counsel testified at the 2010 evidentiary hearing that he focused on the big picture in terms of mitigation and believed he presented the jury with a clear picture of the mitigation issues in Wickham’s case. He also testified that he chose not to present every possible detail about Wickham or to follow up on all of the first mitigation specialist’s recommendations because he thought “juries react to a big picture” and that you can go too far and “turn the jurors off by clouding the issues.” Additionally, trial counsel testified that he decided not to have Wickham evaluated by other doctors because “I didn’t think it was going to get any better. Joyce Carbonell was, in my understanding and my experience, one of the most favorable defense psychologists you could find.” Wickham is not entitled to relief simply because he presented experts at the evidentiary hearing who testified that, in their opinion, trial counsel should have had Wickham evaluated by a *859 psychiatrist or a neuropsychologist. See Rivera v. State, 859 So.2d 495, 504 (Fla.2003) (“[C]ounsel’s reasonable mental health investigation and presentation of evidence is not rendered incompetent ‘merely because the defendant has now secured the testimony of a more favorable mental health expert.’” (quoting Asay v. State, 769 So.2d 974, 986 (Fla.2000))). Accordingly, Wickham has not demonstrated that trial counsel was deficient. See Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000)(“[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.”).
Moreover, Wickham has failed to demonstrate prejudice because “[t]he mitigating evidence adduced at the evidentiary hearing combined with the mitigating evidence presented at the penalty phase would not outweigh the evidence in aggravation.” Tanzi v. State, 94 So.3d 482, 491 (Fla.2012); see also Porter v. McCollum, 558 U.S. 30, 130 S.Ct. 447, 453-54, 175 L.Ed.2d 398 (2009).
In this case, the mitigation evidence presented at the evidentiary hearing was largely cumulative to that presented during the penalty phase. Specifically, at trial, Dr. Carbonell testified concerning Wickham’s medical history and history of childhood institutionalization. Additionally, she testified that, in her opinion, Wick-ham suffered from residual schizophrenia, had a low IQ, and that multiple tests indicated he had organic brain damage. Moreover, she repeatedly ■ emphasized throughout her testimony that, in her opinion, Wickham had an inability to plan, was insane at the time of the crime, and that he qualified for the mitigators of extreme emotional disturbance and unable to conform his conduct to the requirements of the law. .
While Wickham claims that additional testing should have been performed with regard to the issue of brain damage, Dr. Carbonell testified at the evidentiary hearing, not that it was necessary, but only that “it would have been nice” to have been able to perform a complete Hal-stead-Reitan test, which would have possibly given a hint as to whether the brain damage was localized or diffuse. And the record establishes Wickham was administered the portion of the test for overall screening-of brain damage which indicated brain damage, as other tests had, and this information was presented to the jury. Additionally, while the three experts Wick-ham presented at the evidentiary hearing gave more detailed testimony concerning the issue of brain damage, their overall testimony was substantively the same as that presented at trial. Thus, contrary to Wickham’s assertions, no prejudice resulted from failure to complete the Halstead-Reitan or any other tests for brain damage discussed by the experts at the evi-dentiary hearing because the issue of brain damage and its potential effects was fully explored during the penalty phase.
Furthermore, the testimony of the family members presented at the evidentiary hearing was largely cumulative of the testimony at trial regarding Wickham’s abusive childhood and history of mental illness. The only new evidence produced was from his cousin, Gary Welch, and his sister, Alice Bird. Gary Welch testified that his research on the Wickham family tree had revealed that at least two other members of the Wickham family suffered from epilepsy. However, he admitted that he had never met Wickham and would not have had this information at the time of Wickham’s trial. Additionally, Alice Bird testified at the evidentiary hearing for the *860 first time that she was molested as a child and that Wickham witnessed the abuse because they all slept in the same room. However, even if this additional mitigation evidence had been presented at trial along with the other mitigation evidence, it would not have outweighed the evidence in aggravation. As we noted on direct appeal in Wickham, 593 So.2d at 194, this was a “very strong case for aggravation.”
Therefore, Wickham has not established prejudice because he has failed to demonstrate that calling any of these individuals as witnesses would have resulted in mitigation that would undermine “this Court’s confidence in the sentence of death when viewed in the context of the penalty phase evidence and the mitigators and aggrava-tors found by the trial court.” Hurst v. State, 18 So.3d 975, 1013 (Fla.2009).
Accordingly, we affirm the circuit court’s denial of relief.

2. Failure to Object to the Trial Court’s Failure to Issue Written Findings Weighing the Aggravating and Mitigating Circumstances Prior to Sentencing

Next, Wickham claims that trial counsel was ineffective for failing to object to the trial court’s failure to issue contemporaneous written findings weighing the aggravating and mitigating circumstances prior to sentencing. However, Wickham is not entitled to relief because he abandoned the claim and because it is without merit.
Wickham raised this claim in his postconviction motion as part of claim seven and was granted an evidentiary hearing to address his ineffective assistance of counsel claims. However, Wickham failed to pursue the claim; therefore, he abandoned it. See Booker v. State, 969 So.2d 186, 194-95 (Fla.2007) (‘When a defendant fails to pursue an issue during proceedings before the trial court, and then attempts to present that issue on appeal, this Court deems the claim to have been abandoned or waived.” (citing Mungin v. State, 932 So.2d 986, 995 (FIa.2006))).
Furthermore, the claim is without merit because trial counsel was following his client’s wishes. The record establishes that trial counsel consulted with Wickham and that Wickham desired to waive any requirement for immediate written findings and to proceed directly with sentencing. Therefore, trial counsel was not deficient. See Brown v. State, 894 So.2d 137, 146 (Fla.2004) (“An attorney will not be deemed ineffective for honoring his client’s wishes.”).
Accordingly, Wickham is not entitled to relief.

3. Failure to Object to the State’s Closing Argument

Next, Wickham claims that trial counsel was ineffective for failing to object to the prosecutor’s improper comment during penalty phase closing arguments that allegedly implied that, if the jury did not recommend death, he could be released and might kill again. We disagree and affirm the circuit court’s denial of this claim.
In order to prevail on an ineffective assistance claim for failing to object to comments made during closing argument, Wickham “must first show that the comments were improper or objectionable and that there was no tactical reason for failing to object.” Hildwin v. State, 84 So.3d 180, 191 (Fla.2011) (quoting Stephens v. State, 975 So.2d 405, 420 (Fla.2007)). However, Wickham failed to question trial counsel at the evidentiary hearing regarding this claim. Therefore, he did not establish that trial counsel’s performance was deficient. See Jones, 845 *861 So.2d at 64 (“Postconviction relief cannot be based on speculative assertions.”).
Furthermore, the prosecutor’s comment that Wickham could get out of jail after twenty-five years was an accurate statement of the law. In 1986, at the time the crime was committed, this was not a case where the only option, other than death, was life without parole. See Reese v. Sec’y, Fla. Dep’t of Corr., 675 F.3d 1277, 1293 (11th Cir.2012)(holdirig that the pros ecutor’s comment, that “[the defendant] would have been eligible for parole, if the jury had recommended a life sentence, because capital defendants then faced a minimum sentence of twenty-five years,” was an accurate statement of the law and was not improper), cert. denied, — U.S. -, 133 S.Ct. 322, 184 L.Ed.2d 191 (2012); Chandler v. Moore, 240 F.3d 907, 917 (11th Cir.2001) (denying Florida defendant’s ineffective assistance of counsel claim because “the prosecutor’s statement that [the defendant] might be eligible for parole in less than 25 years if the jury recommended a life sentence ... was an accurate statement to which counsel had no reason to object.”).
Additionally, the prosecutor’s comment in reference to the fact that Wickham had previously been incarcerated for armed robbery, was paroled, and then “found another victim” was not improper. Specifically, evidence was introduced at trial that Wickham had previously been convicted of armed robbery twenty years prior, had been incarcerated for some years and then released, and then committed the murder and robbery of Fleming. Thus, “the prosecutor’s statement did not constitute improper argument but was [a] fair comment on the evidence adduced at trial.” Wade v. State, 41 So.3d 857, 868 (Fla.2010).
More importantly, Wickham cannot demonstrate that trial counsel’s failure to object to the prosecutor’s comments resulted in prejudice. In order to demonstrate prejudice for counsel’s failure to object, the defendant
must demonstrate that the comments deprived “the defendant of a fair and impartial trial, materially contribute^] to the conviction, [were] so harmful or fundamentally tainted as to require a new trial, or [were] so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise.”
Stephens, 975 So.2d at 420 (quoting Spencer v. State, 645 So.2d 377, 383 (Fla.1994)); see also Lugo v. State, 2 So.3d 1, 17 (Fla.2008) (“[W]here improper comments by a prosecutor do not constitute reversible error, the defendant cannot ‘demonstrate the prejudice requisite for a successful ineffective assistance of counsel claim.’ ” (quoting Hodges v. State, 885 So.2d 338, 356 (Fla.2004))). None of the prosecutor’s comments fundamentally tainted the verdict or deprived him of a fair trial.
Accordingly, we affirm the circuit court’s denial of this claim.
C. Competency
Next, Wickham argues that the circuit court erred by summarily denying his claim that he was tried while incompetent and that the trial court erred by failing to sua sponte order a competency hearing. We affirm the circuit court’s summary denial because these claims are procedurally barred and without merit.
Both claims are procedurally barred because Wickham failed to raise them on direct appeal. See Nelson v. State, 43 So.3d 20, 33 (Fla.2010) (noting that defendant’s claims that he was tried while incompetent or that the trial court erred by failing to sua sponte order a *862 competency hearing were procedurally barred because they were not raised on direct appeal); Carroll v. State, 815 So.2d 601, 610 (Fla.2002)(“[The defendant’s] underlying claim that he was incompetent to stand trial should have been raised on direct appeal and therefore is procedurally barred.”).
Aside from the procedural bar, these claims lack merit because there is no evidence that Wickham was tried while incompetent or that the trial court should have sua sponte ordered a competency hearing. The record reveals that Wick-ham’s competency to stand trial was evaluated by Dr. Carbonell and she determined that he was competent to stand trial, the trial court was made aware of this determination, and trial counsel never requested a separate competency hearing. Additionally, the State’s expert, Dr. McClaren, testified at the evidentiary hearing that, although he did not perform a competency evaluation on Wickham, he believed that Wickham was competent to stand trial based on his interactions with Wickham.
Furthermore, nothing occurred during the trial process that would have caused the court to question Wickham’s competency. Contrary to Wickham’s assertions, although his behavior in the courtroom — refusing to attend court at times, making inappropriate remarks to the jury after sentencing, stating that he hoped his victim from a previous robbery would get hit by a car and die during a discussion about the admission of that victim’s testimony in this trial, and making threatening remarks to the Fleming family — may have been disruptive or bizarre at times, it does not establish that he was incompetent to proceed. See Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir.1995) (noting that “low intelligence, ... [or] bizarre, volatile, and irrational behavior [cannot] be equated with mental incompetence to stand trial”). Moreover, trial counsel testified at the evidentiary hearing that he never had any indication that Wickham was not competent to stand trial, that he had a good relationship with Wick-ham and discussed various trial strategies with him, and that he believed Wickham understood even the most complex matters that he discussed with him.
Accordingly, we affirm the circuit court’s denial of these claims.[6]
D. Cumulative Impact of Judicial Errors
Wickham claims that when considered cumulatively the issues previously discussed, as well as several additional errors he mentions in passing,[7] deprived him of a *863 fair trial and entitle him to relief. Having carefully considered each claim of error, we find these claims are without merit and summarily deny relief. Accordingly, the cumulative error claim must also fail. See Bell, 965 So.2d at 75.
E. Claim of Mental Illness as a Bar to Execution
Wickham’s final postconviction claim is that he is exempt from execution under the Eighth Amendment to the United States Constitution because his various mental illnesses and defects place him in a similar category as those whose executions are barred because they are mentally retarded. We deny relief because this Court has already determined that mental illness is not a per se bar to execution. See Connor v. State, 979 So.2d 852, 867 (Fla.2007) (citing Diaz v. State, 945 So.2d 1136, 1151 (Fla.2006)).
III. HABEAS PETITION
A. Ineffective Appellate Counsel
We deny Wickham’s petition for habeas corpus. Of the many ineffective assistance of appellate counsel claims presented,[8] only one of them warrants discussion.
Claims of ineffective assistance of appellate counsel are appropriately presented in a petition for a writ of habeas corpus. Valle v. Moore, 837 So.2d 905, 907 (Fla.2002). The standard of review for ineffective appellate counsel claims mirrors the Strickland, standard for ineffective assistance of trial counsel. Id. In order to grant habeas relief on ineffectiveness of appellate counsel, this Court must determine:
first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986) (citing Johnson v. Wainwright, 463 So.2d 207, 209 (Fla.1985)). And appellate counsel will not be deemed ineffective for failing to raise meritless issues or issues that were not properly raised in the trial court and are not fundamental error. Valle, 837 So.2d at 908.
Wickham argues that the trial court improperly relied on his 1969 armed robbery conviction and his 1983 aggravated motor *864 vehicle theft conviction as predicate felonies for the prior violent felony aggravator. We disagree and deny relief because this claim is without merit.
Wickham argues that the trial court’s reliance on his 1969 armed robbery conviction as a basis for the prior violent felony aggravator was in violation of Johnson v. Mississippi, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), because the conviction was determined constitutionally infirm under Boykin[9] in People v. Wickham, 41 Mich.App. 858, 200 N.W.2d 339 (1972). However, “[i]n order to state a claim under Johnson, a defendant must show that the conviction on which the prior violent felony aggravator is based has been reversed.” Phillips v. State, 894 So.2d 28, 36 (Fla.2004). Wickham’s conviction was not vacated or set aside. Thus, appellate counsel was not deficient for fading to raise this meritless issue.
Additionally, Wickham argues the trial court improperly instructed the jury that his 1983 aggravated motor vehicle theft conviction was a violent crime as a matter of law for purposes of the prior violent felony aggravator when violence was not a necessary element of the crime under the Colorado statute.
In Florida, when a crime is not per se violent, the determination of whether the crime involves the use of threat or violence for the purposes of the prior violent felony aggravator depends upon the facts of the crime. See Johnson v. State, 465 So.2d 499, 505 (Fla.1985), overruled on other grounds by In re Instructions in Criminal Cases, 652 So.2d 814 (Fla.1995). In such cases, the jury should be instructed that “they [need] to consider the individual circumstances of the crime in order to determine if it was violent before weighing it as a prior violent felony.” Sweet v. State, 624 So.2d 1138, 1143 (Fla.1993) (citing Johnson, 465 So.2d at 505). Therefore, the trial court erred in instructing the jury that Wickham’s conviction for aggravated motor vehicle theft was a crime of violence as a matter of law.
However, this was harmless error because the State presented the testimony of Lieutenant Hibberd which established that the crime involved violence because during a high-speed chase Wickham rammed the officer’s car three times causing him to suffer physical injury. See Hess v. State, 794 So.2d 1249, 1264 (Fla.2001) (holding that the trial court erred by instructing the jury that lewd assault on a child was a per se crime of violence, but that this was harmless error because the State had introduced the information alleging that the crime involved the use of threat or violence). Additionally, the error was harmless because the 1969 armed robbery conviction served as an independent basis for the prior violent felony aggravate r. See Sweet, 624 So.2d at 1143 (instruction that crime was a per se crime of violence was harmless error because “there were several other convictions supporting the prior violent felony aggravator”). Therefore, appellate counsel was not deficient for failing to raise this argument on direct appeal. See Freeman, 761 So.2d at 1069 (“ ‘[T]he deficiency must concern an issue which is error affecting the outcome, not simply harmless error.’ ” (quoting Knight v. State, 394 So.2d 997, 1001 (Fla.1981))).
Accordingly, because Wickham has failed to demonstrate either deficient performance or prejudice, we deny relief.
IV. CONCLUSION
For the foregoing reasons, we affirm the denial of Wickham’s motion for postconviction relief and deny his habeas petition.
It is so ordered.
*865 POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, J., concurs in result.

. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const.

. The trial court found the following aggravating circumstances: (1) the capital felony was committed by a person under a sentence of imprisonment; (2) Wickham was previously convicted of a felony involving the use or threat of violence; (3) the capital felony was committed while Wickham was engaged in the commission of a robbery; (4) the capital felony was committed for the purpose of avoiding or preventing a lawful arrest; (5) the capital felony was heinous, atrocious, or cruel; and (6) the capital felony was committed in a cold, calculated, and premeditated manner. Wickham v. State, 998 So.2d 593, 595 n. 1 (Fla.2008).

. We rejected the following claims raised on direct appeal: (1) "the trial court erred in limiting testimony about [Wickham’s] alleged inability to form the specific intent to commit premeditated murder;” (2) "the trial court erroneously admitted evidence that [Wick-ham] had [planned] to escape from the Leon County jail;" (3) “the trial court erred in finding that the murder was cold, calculated, and premeditated;” and (4) that the death penalty was disproportionate in his case. Wickham, 593 So.2d at 193-94. However, we reversed the trial court's finding that the murder was heinous, atrocious, or cruel. Id. at 193. Additionally, we found that the error in weighing the aggravating and mitigating factors was harmless beyond a reasonable doubt. Id. at 194.

. To the extent that Wickham may be asserting an ineffective assistance of counsel claim based upon this same information, his claim does not warrant relief. Counsel cannot be ineffective for failing to raise a meritless claim.

. Wickham argues that the cumulative effect of the Brady and Giglio violations warrant relief. We deny this claim. See Bell v. State, 965 So.2d 48, 75 (Fla.2007) ("[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail." (quoting Griffin v. State, 866 So.2d 1, 22 (Fla.2003))).

. Additionally, we affirm the circuit court’s denial of Wickham’s claim that trial counsel was ineffective for failing to request a competency hearing. Because there was no evidence that Wickham was incompetent to stand trial or became incompetent at any time during the proceedings, Wickham did not demonstrate deficiency or prejudice.

. In addition to the issues previously discussed, Wickham mentions in passing, without any analysis or argument, that the following errors occurred: (1) prospective jurors were exposed to improper influences; (2) the prosecutor made improper arguments during his guilt phase closing arguments; (3) the death sentence was influenced by the victim's father's statement that he desired Wickham to receive the death penalty; (4) the jury instruction on the CCP aggravator instruction was improper because it failed to differentiate between simple and heightened premeditation; and (5) the predicate felonies offered in support of the prior violent felony aggravator were ineligible. We deny these claims because they are procedurally barred as they should have been or could have been raised on direct appeal. See Reaves v. State, 826 So.2d 932, 936 n. 3 (Fla.2002). Furthermore, Wickham is not entitled to relief because his arguments are conclusory and mere speculation. See Freeman, 761 So.2d at 1061 (explaining that ”[t]he defendant bears the bur *863 den of establishing a prima facie case based upon a legally valid claim” and conclusory allegations are not sufficient); see also Jones, 845 So.2d at 64.

. We summarily deny the following claims that Wickham's appellate counsel was ineffective for failing to raise these issues on direct appeal because these claims were raised in Wickham’s postconviction motion and are therefore procedurally barred: (1) the trial court failed to issue contemporaneous written findings weighing the aggravating and mitigating factors prior to sentencing; (2) Wick-ham was tried while incompetent and the trial court erred by failing to sua sponte order a competency hearing; (3) there was a prejudicial atmosphere present during the trial; (4) the trial court committed fundamental error by failing to inquire into misconduct during jury selection; and (5) the trial court erred in failing to issue written reasons for an upward departure in sentencing for armed robbery. See Knight v. State, 923 So.2d 387, 395 (Fla.2005)(holding that claims raised in a postconviction motion cannot be relitigated in a habeas petition). Additionally, we deny Wickham’s claim that the cumulative effect of these alleged errors warrants relief. See Bell, 965 So.2d at 75 (‘‘[Wjhere individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail.” (quoting Griffin, 866 So.2d at 22)).

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).